(66 App. Div. 239.)

BILLINGS v. ALBRIGHT.

(Supreme Court, Appellate Division, Fourth Department. November 12, 1901.)

1. CRIMINAL CONVERSATION—EVIDENCE—SUFFICIENCY.
      In an action for criminal conversation, evidence by two apparently reputable witnesses that defendant and plaintiff's wife occupied the same room, in which there was but one bed, for two successive nights, and that defendant introduced plaintiff's wife as his wife, is sufficient foundation for a finding that defendant had committed adultery with plaintiff's wife.

2. SAME—DAMAGES.
      Six thousand dollars is not necessarily excessive damages in an action for criminal conversation.

3. SAME—CONVERSATIONS OF WIFE.
      In an action for criminal conversation, conversations, declarations, and statements of plaintiff's wife, had with plaintiff, or made in his presence,

are admissible to show the state of feeling on the part of the wife toward her husband prior to defendant's interference, but for that purpose only.

4. SAME—CONVERSATIONS WITH THIRD PERSONS—HEARSAY.
  In an action for criminal conversation, statements, declarations, and conversations made to and had with third persons, not in the presence of either plaintiff or defendant, or characterizing any act forming part of the res gestæ, are hearsay, and inadmissible to show the state of the wife's feelings toward plaintiff.

5. SAME—PREJUDICIAL EFFECT.
  In an action for criminal conversation, evidence of a conversation between plaintiff's wife and her father-in-law, in which she refused to comply with his request that she discontinue her interviews with defendant, was apt to lead the jury to infer that, unless her relations with defendant were meretricious, she would have been willing to terminate them, and hence its erroneous admission was not harmless.

6. SAME—ADULTERY OF HUSBAND—PLEADING.
  Under Code Civ. Proc. § 536, providing that in actions for criminal conversation the defendant may prove facts not amounting to a total defense, but tending to reduce damages, if such facts are set forth in the answer, defendant in such an action cannot prove adultery of the plaintiff when such act has not been pleaded.

  Adams, P. J., dissenting.

Appeal from trial term, Monroe county.

Action by Warren M. Billings against Frank Albright. From a judgment in favor of plaintiff, defendant appeals. Reversed.

The action was commenced on the 6th day of July, 1900, to recover damages alleged to have been sustained by the plaintiff because of the alienation of his wife's affections, caused by the adulterous intercourse had with her by the defendant.

Argued before ADAMS, P. J., and McLENNAN, SPRING, WILLIAMS, and HISCOCK, JJ.

J. W. Barrett, for appellant.
Clarence W. McKay, for respondent.

McLENNAN, J. The plaintiff, in his complaint, alleges, in substance, that he was married to his wife on or about the 14th day of September, 1881, in the town of Webster, in this state; that the defendant, willfully intending to injure the plaintiff, and deprive him of the comfort, society, aid, and assistance of his said wife, on the 14th day of September, 1895, and on divers other days and times after that day and within two years of and before the commencement of this action, committed adultery with her, and all while she was living with the plaintiff as his wife; that by reason thereof her affection for the plaintiff was wholly and entirely alienated and destroyed, and on the 1st day of May, 1899, she ceased to live or cohabit with the plaintiff. The defendant, by his answer, admits the marriage, and denies all the other allegations of the complaint, and as a partial defense alleges, in substance, that the plaintiff was addicted to the excessive use of intoxicating liquors and morphine, and was subject to hallucinations and delusions by reason thereof; that he had treated his wife in an unkind, harsh, and tyrannical manner, used personal violence toward her, charged her with being unchaste and intimate with other men, and that solely in consequence

of such cruel and inhuman treatment she separated and lived apart from him, and withdrew from him her love and affection, and not because of any act done by the defendant.

The first point made by appellant's counsel is that the verdict is not supported by, or at least is against the weight of, the evidence, and the first fifty-odd pages of his brief are devoted to a discussion of that proposition. We think it only necessary to say that the evidence of the first two witnesses called by the plaintiff,—who, so far as appears, were reputable people,—if believed, was sufficient to justify the jury in reaching the conclusion which it did. They both testified that about the 14th day of September, 1895, the defendant was at their house in Seneca Falls, with the plaintiff's wife; that she was introduced to them by the defendant as his wife; and that she and the defendant occupied the same room, in which there was but one bed, for two successive nights. We deem it unnecessary to refer in detail to the great mass of evidence bearing upon this issue, but, after a careful examination of it all, and after giving due consideration to the suggestions made by appellant's counsel in respect to it, we are impelled to the conclusion that it was of such a character as to justify the jury in finding that the defendant had committed adultery with the plaintiff's wife prior to the commencement of this action, and within the times specified in the complaint.

It is also urged by appellant's counsel that the verdict of the jury—$6,000—was excessive, and for that reason that the motion for a new trial should have been granted. After an examination of all the evidence relating to that question, and considering all the circumstances, we are of the opinion that this court would not be justified in declaring that the damages as fixed by the jury were excessive, having in mind the rules which have been laid down as applicable to cases of this kind. 8 Am. & Eng. Enc. Law (2d Ed.) p. 267, and cases cited; Smith v. Mastin, 15 Wend. 270.

The learned counsel for the appellant calls attention to a large number of exceptions taken to the rulings of the learned trial court, which he contends present such error as to require a reversal of the judgment. We are of the opinion that only three, or at least only three classes, of such exceptions merit attention: First. Were the statements of the plaintiff's wife, made to him, but not in the presence of the defendant, competent for the purpose of showing or bearing upon her state of feeling toward the plaintiff? Second. Were such statements, made to third parties, not in the presence of the defendant, competent for the same purpose? And, third, was the evidence properly excluded which was offered by the defendant tending to show immorality on the part of the plaintiff, and that he had committed adultery after his marriage and while living with his wife, and immediately before or during the time it is claimed her affections were alienated; the fact not having been pleaded by the defendant in mitigation of damages, and it not being claimed that such fact was known to the plaintiff's wife while she continued to live and cohabit with him? It was only necessary for the plaintiff, in order to maintain his action, to prove his marriage, and the criminal intercourse between his wife and the defendant, and that it was without his con-

sent. Upon proof of those facts he was entitled to recover at least nominal damages. The gist of the action, however, the basis for substantial damages, is the husband's loss of consortium,—of his right to the conjugal society of his wife. Bennett v. Bennett, 116 N. Y. 584, 23 N. E. 17, 6 L. R. A. 553, and cases cited. It was proper for the jury, in order to determine the amount of damages which should be awarded to the plaintiff, to know the exact relations which existed between the plaintiff and his wife before there was any criminal interference on the part of the defendant. The jury was entitled to know the state of feeling, the degree of mutual love and affection which existed between the husband and wife, the prevailing habit of their daily intercourse, the treatment of each by the other, and their daily conversation and conduct one with the other; all for the purpose of enabling the jury to determine the degree of injury which the plaintiff sustained through and by reason of the defendant's acts. The jury was also entitled to know to what extent the domestic happiness of the parties had been destroyed; to what extent the relations previously existing had been changed by the acts of the defendant; whether afterwards the conversation and acts of the wife with and toward her husband were such as to indicate want of love and affection; in short, whether their daily intercourse, habit of life and living, were such as to indicate that her affections had been alienated, and, if so, whether wholly or only in part. The jury was entitled to know, so far as possible, all the material acts, conversations, and circumstances which went to make up the daily life of these parties, in order that they might determine whether or not the plaintiff's wife ceased to be such to him, except in name, after the time when the defendant was guilty of criminal intercourse with her Applying this rule to the case at bar, the conversations, declarations, and statements of the plaintiff's wife had with him, made to him, or which were made in his presence, were competent for the purpose of proving the state of feeling on the part of the wife toward her husband, affection or want of affection for him; and were admissible either on behalf of the plaintiff or of the defendant, depending upon their nature and character. It will be seen that such conversations, declarations, and statements might even more accurately indicate the true state of the wife's feeling than any mere acts which might be proven or described. It cannot be urged that it would not have been competent for the plaintiff to prove that previous to the time of the alleged criminal intercourse his wife was his constant companion; devoted her time to caring for him and looking after his comfort and happiness; that she faithfully performed all those duties which cannot be enumerated, but which together make a faithful and dutiful wife. It would seem equally clear that, although perchance unable or not qualified to do or perform those outward or overt acts, it would have been competent to show her protestation of love and affection for her husband; her solicitude for his welfare and happiness; her willingness, expressed to him, to do all within her power in that regard,—all indicating an even greater depth of feeling, an even more tender love and affection, than could any or all of the acts referred to. So, again, concededly

it was competent for the plaintiff to show that after defendant's alleged criminality the plaintiff's wife did acts in his presence indicating a want of regard, love, and affection on her part, and in the course of the trial much evidence of that character was admitted without objection by the defendant. We think that the statements, conversations, and declarations of the plaintiff's wife with and to her husband, indicating such changed feeling on her part, were competent,—competent solely for the purpose, as held by the learned trial court, of proving her state of feeling, and not for the purpose of proving or tending to prove adultery on the part of the defendant. If the plaintiff's wife had done or sought to do him bodily harm, the fact might properly have been proved either by the plaintiff or any one else who witnessed the occurrence, because such act on her part would indicate want of affection for her husband. If, instead, the wife had said to the plaintiff that she wished or hoped or desired that bodily harm might befall him, it would have been competent for him or for any other person hearing such statement to testify to the fact, also as indicating that the wife did not have affection for her husband. In such an action the thing to be determined is the state of the wife's feeling towards her husband. It is the res gestæ, and can only be evidenced by acts or words; and both or either, when done or spoken in the presence of the husband, are competent to show such feeling.

The proposition that the conversations, declarations, and statements of the wife had with, made to, or in the presence of the husband are competent evidence in a case of this character when indicating the state of feeling of the wife toward her husband, and admitted solely for that purpose, is supported not only by reason but by authority as well. One of the earliest cases to which attention has been called in which this question was decided is Trelawney v. Colman, 2 Stark. 191. In that case it was held that a letter written by a wife to her husband while she was absent from him, and before the criminal intercourse took place, was competent evidence to show the wife's state of feeling toward her husband. The same ruling was laid down in Willis v. Bernard, 8 Bing. 376. The cases of Edwards v. Crock, 4 Esp. 39, Preston v. Bowers. 13 Ohio St. 1, 82 Am. Dec. 430, and Jones v. Thompson, 6 Carr. & P. 415, are among the older cases which have laid down the rule that for the purpose of showing the affection, the domestic happiness, the state of the wife's feeling toward her husband, it is competent for the plaintiff to testify to any statements or declarations made to him by her which would throw light upon that issue. While, so far as we have been able to discover, the precise question has not been decided by the court of appeals of this state, it has been repeatedly passed upon by the lower courts.

In Buchanan v. Foster, 23 App. Div. 542, 48 N. Y. Supp. 732, the learned judge who wrote the opinion of the court used the following language, which states the rule and is the basis for the admission of evidence of the character received in the case at bar:

"While it is undoubtedly true that, where an act is proper to be proven as part of the res gestæ, the declarations accompanying that act may be

offered in evidence for the purpose of characterizing the act, even though made in the absence of the defendant; but such declaration is no proof of the fact declared as against the defendant, independent of competent evidence for its establishment."

In Baker v. Baker, 16 Abb. N. C. 293, the headnote is as follows:

"The plaintiff, testifying in her own behalf to the fact of their parting, may testify to the conversation that occurred between them at the time, to show their separation, and the ground assigned by the husband for it; for this declaration is part of the res gestæ."

In Bennett v. Smith, 21 Barb. 439, which was an action for enticing away plaintiff's wife, it was held that the declarations of the wife, made within a few days after her marriage, expressing her wishes in respect to living with the plaintiff as his wife, were competent. The court said:

"The main question in the case was whether the defendant prevented the return of the wife to her husband during that period; and, in connection with other circumstances, tending to prove that she was not then under constraint, her declarations were admissible as part of the res gestæ."

Remsen v. Hay, 14 Wkly. Dig. 443, was also an action for enticing the wife of the plaintiff to leave her husband, and it was held that the conversation between the husband and wife in his house after she had left him, stating that she would not return, and which throws light upon the motives which induced her to leave, is admissible as part of the res gestæ.

In Pollock v. Pollock, 9 Misc. Rep. 82, 29 N. Y. Supp. 37, the same doctrine was asserted, and a large number of cases decided by the courts of this and other states, and a large number of cases cited in support of the proposition, although it was held in that case that the evidence, which of itself was competent, was given the force and effect of evidence tending to prove the subject-matter, to wit, defendant's guilt, and, it being incompetent for such purpose, the judgment was reversed. The same rule has been laid down by the courts of many of the sister states. Fratina v. Caslini, 66 Vt. 273, 29 Atl. 252, 44 Am. St. Rep. 843; White v. Ross, 47 Mich. 172, 10 N. W. 188; Holtz v. Dick, 42 Ohio St. 23, 51 Am. Rep. 791; Edgell v. Francis, 66 Mich. 303, 33 N. W. 501; Glass v. Bennett, 89 Tenn. 478, 14 S. W. 1085; Gilchrist v. Bale, 8 Watts, 355, 34 Am. Dec. 469; Palmer v. Crook, 73 Mass. 418.

In some cases cited by defendant's counsel apparently a different doctrine has been held. This is especially so if the written statements or declarations of a wife to her husband be regarded the same, and as governed by the same rules, as her oral statements and declarations. In Whitman v. Egbert, 27 App. Div. 374, 50 N. Y. Supp. 3, it was held that a letter written by the husband to the wife, indicating his state of feeling toward her, was not competent evidence in an action brought by the wife for the alienation of her husband's affections. An examination of that case, however, discloses the fact that the learned court was influenced to such conclusion by the fact that the letter was of such a character as to tend to prove the wrongful act of the defendant, for which purpose it was clearly not competent, as well as the state of the husband's

feeling toward his wife. The case of Hobby v. Hobby, 64 Barb. 277, and others of like character, can have no application to the question here under discussion. In those cases—which were actions for divorce—the letters of the wife to the alleged paramour, which never came to his possession, were held not to be competent. In Manwarren v. Mason, 79 Hun, 592, 29 N. Y. Supp. 915, relied upon by defendant's counsel, it does not appear by the opinion of the court whether the declarations of the husband in that case, not in the presence of the defendant, were made to the plaintiff or to third parties, and the cases cited to support the decision in that case can have no application to the questions here present.

Without further reviewing the cases bearing more or less directly upon the question, we conclude that the weight of authority supports the proposition contended for by the respondent that the oral declarations of the plaintiff's wife, made to or in the presence of her husband, indicative of her state of feeling toward him, were competent solely upon that question, and that the rulings of the learned trial court were correct in admitting such evidence.

We now come to a consideration of the second question raised by defendant's exceptions, to wit: Is it competent for a third person, upon the trial of an action brought by a husband for the alienation of his wife's affections because of her adultery with the defendant, to testify as to a conversation had with her, and to statements and declarations made by her, not in the presence of the plaintiff or of the defendant, and in no way explanatory of any act then done indicative of the state of her feelings toward the plaintiff? The question is raised in this case by the admission over defendant's objection of the evidence of Louis J. Billings, the father of the plaintiff. He testified, in substance, that upon an occasion he observed conduct between the plaintiff's wife and the defendant which led him to mistrust that improper relations existed between them. Subsequently, and several weeks after (and this is the evidence objected to), he testified that he and the plaintiff's wife were alone in the house of the witness, and that he had a conversation with her, in which he referred to what he had previously seen; advised the plaintiff's wife to give up the defendant; and he was permitted to state her answers made in reply, which were, in effect, that the defendant had been kind to her, that he had always used her well, was very much of a gentleman, and that she could not see any good reason why she should not talk with him when she met him. The objection was made to the conversation upon the ground that it was incompetent as against the defendant, he not being present. The court said, "Received as against the plaintiff's wife, as bearing upon the alienation of the affections." In the course of the examination the witness was asked: "Q. Did she [the plaintiff's wife] on that occasion say anything about Mr. Albright,— what kind of a man he was?" The question was objected to as incompetent as against the defendant, it not being in his presence. The court then said, "What she said also about Mr. Albright I will receive, as showing her relationship with him and friendship for him." Even if we assume that the entire evidence objected to was

received for the sole purpose of proving the state of the wife's feeling for her husband, and that the trial court intended to limit it to that issue notwithstanding the language used in overruling the objection, we think it was incompetent. It will be seen that the evidence objected to was hearsay, pure and simple. It in no manner proved the state of the wife's feeling toward her husband. At most, it was only proof of what she said it was. It did not prove the fact. It was only proof of what the wife said was the fact. At the time she did no act which could be regarded as a part of the res gestæ, and therefore her statements were not explanatory of any act which it was sought or which it was competent to prove, and were not admissible upon that ground. It is undoubtedly true (to illustrate) that, if the wife was in the act of removing her personal effects from her husband's home, that fact would be competent, and what she said to characterize or as explanatory of such act would also have been competent; but, such not being the tenor or effect of the conversation, we fail to see how it comes within any of the exceptions to the general rule which excludes hearsay evidence, and no good reason is apparent why such an exception should be made to the rule. If, in collusion with her husband, the statements of the wife made to third parties, declaratory of her love and affection for her husband, might be so numerous and emphatic as to portray her as the embodiment of virtue, and as possessed of all the attributes of a true and dutiful wife, previous to the time of her fall occasioned by the acts of the defendant, and however much such apparent situation was in conflict with the truth, the defendant would be powerless to prove it, or even give any evidence upon the question, unless willing to take the chances of calling the plaintiff's wife as a witness in his behalf. Again, sole by statements made by the wife to third parties evidence could be made ad libitum to the effect that after the alleged adulterous intercourse between her and the defendant her love and affection for her husband had changed to disgust and hatred, when in truth and in fact no change had occurred; and again the defendant in such case would be powerless to prove the fact; would be deprived even of an opportunity to cross-examine the person whose feelings were the subject of investigation. So, too, if a plaintiff in such a case have a meritorious cause of action, and his wife is in collusion with the defendant, she, by making statements to third parties, who may testify to them with absolute accuracy, may wholly destroy such cause of action, the plaintiff being deprived even of the privilege of calling his wife as a witness, because of the prohibition contained in section 831 of the Code of Civil Procedure. To illustrate again: Suppose a wife in such case, after her adulterous intercourse commenced, should state to a dozen witnesses, not in her husband's presence, that prior to such time, and even ever since her marriage, she hated and despised her husband; had no love or affection for him; intended to leave him at the first opportunity; that if she could not receive the attentions of the defendant it was her intention to attempt to secure those of some other man; and that such third parties are permitted to testify to such statements and declara-

tions, we will assume with absolute accuracy,—such testimony, if competent, would be quite sufficient to justify a jury in concluding that the plaintiff sustained no substantial damage because of the fact that his wife was debauched. And yet there would not be one word of proof of the fact. There would simply be proof of what the wife said was the fact when not under oath. The above suggestions are made for the purpose of indicating that, in our opinion, no good purpose can be served in such case by making an exception to the rule which excludes hearsay evidence, and placing the stamp of approval upon evidence of that character, but, on the contrary, it would be productive of fraud, collusion and injustice.

Some of the English cases to which attention has been called would seem to support the contention of respondent's counsel that the evidence of the witness Billings was properly received. In Willis v. Bernard, supra, it was held that in an action of this character the letters of the wife to her husband and others were admissible in evidence to show the state of the wife's feelings. See, also, Jones v. Thompson, supra. Some of the text writers seem to lay down the same rule, citing the above cases and others as authority. In Abb. Tr. Ev. p. 685, it is said:

"It is competent to prove * * * the wife's manner of speaking and writing of her husband even when absent from him."

Phillips, in his work on Evidence, at page 212, says:

"And a witness will be allowed to state the opinion which he formed of the wife's affection for her husband from the anxiety which she has expressed concerning him, and from her mode of speaking of him during his absence;" and the author cites Trelawney v. Colman, supra.

So far as we have been able to discover, there is no case decided by the courts of this state which support's the respondent's contention, and holds in words or in principle that in an action of this kind it is competent to prove the declarations or statements of the wife, made to third persons in the absence of both parties to the action, expressive of her state of feelings toward her husband, when such statements or declarations are in no manner explanatory of an act done at the time which is a part of the res gestæ; and therefore can find no sufficient authority to justify this court in making an exception to the general rule which excludes hearsay evidence, and holding such evidence competent.

The ruling of the learned trial court was also erroneous because by it the jury were permitted to consider the evidence upon the question of defendant's guilt, "as showing her relationship with and friendship for him." It is unnecessary to cite authorities in support of the proposition that statements of a person, not made in the presence of the defendant or with his knowledge, were not competent to prove his guilt; were not competent in this case to prove "her [the wife's] relationship with him."—whether adulterous or otherwise. We cannot say that the error in receiving the evidence of the witness Billings, which was objected to, was not prejudicial to the defendant. Indeed, it is apparent that its character was such that it probably influenced the jury to believe that the relations which existed between the defendant and the plaintiff's wife were

improper, else she would have yielded to the entreaties of her father-in-law, and have promised to discontinue them, instead of expressing a determination to continue them.

The evidence offered by the defendant for the purpose of proving that the plaintiff had been guilty of adultery or other immoral practices was properly excluded by the learned trial court for the reason that the fact was not pleaded by the defendant. Section 536 of the Code of Civil Procedure provides that in an action of this character "the defendant may prove at the trial facts not amounting to a total defense tending to mitigate or otherwise reduce the plaintiff's damages, if they are set forth in the answer." In the case at bar, as we have seen, the plaintiff's cause of action was made out by proving his marriage and the criminal intercourse of the defendant with his wife, and therefore the only legitimate purpose of the evidence offered was to reduce the plaintiff's damages, and, the facts not having been pleaded, proof of the facts was properly excluded. Willover v. Hill, 72 N. Y. 63; Bradner v. Faulkner, 93 N. Y. 515.

The defendant was permitted to give evidence of any and all facts set up in his answer reflecting upon the character and standing of the plaintiff, and tending to show what kind and manner of man he was, and no error was committed by the learned trial court in that regard.

The law applicable to the questions involved may be stated as follows: In an action for criminal conversation, brought by the husband, oral declarations or statements made by the plaintiff's wife to him, or in his presence, before the commencement of the action, indicating the state of his wife's feelings toward him, there being no proof of collusion, are competent solely for the purpose of proving such feeling and as bearing upon the question of damages, and may be testified to by the plaintiff, or by any other person who may have heard such declarations or statements. In such an action, such declarations or statements made to third parties, and not in the presence of either of the parties to the action, and not made in explanation of or to characterize any act which is part of the res gestæ, are not competent for any purpose; and the reception of such evidence, if harmful to the party objecting to it, constitutes reversible error. In such an action it is competent for the defendant to prove the adultery of the plaintiff, the relations which he sustained to his wife, —whether affectionate or otherwise; that his treatment of her was cruel; that his habits were bad; and any and all facts which tend to show the kind of man the plaintiff was before the commencement of the action,—provided only that such facts are pleaded in the defendant's answer as a partial defense, and in mitigation of damages, but not otherwise.

It follows that the judgment and order appealed from should be reversed, and a new trial ordered with costs to the appellant to abide event.

Judgment and order reversed, and new trial ordered, with costs to the appellant to abide event.

SPRING and WILLIAMS, JJ., concur.

HISCOCK, J.  I concur in the result upon the ground that the testimony of Louis J. Billings, the father of the plaintiff, objected to by the defendant, was improperly admitted.  It seems to me that the only natural and reasonable effect of that testimony was to show the relationship and feeling of plaintiff's wife with and toward defendant; that it did not, except in the indirect way of showing what her feelings were toward defendant, tend to develop what her mental attitude was toward the plaintiff.  I do not believe that there is any sufficient authority for proving the relations between the wife and the defendant by the declarations of the former made in the absence of the latter.  For this reason I think the evidence was incompetent, and that the judgment should be reversed.

ADAMS, P. J. (dissenting).  The prevailing opinion, as I read it, discusses the competency of the evidence of the witness Louis T. Billings upon the assumption that it tended to show the relations existing between Mr. and Mrs. W. M. Billings, whereas its real and only effect was, I think, to show the relations existing between Mrs. Billings and the defendant.  For that purpose it was doubtless incompetent.  But the illicit relations existing between the defendant and Mrs. Billings are so overwhelmingly established by other evidence that I do not think this error is sufficiently prejudicial to require a reversal of the judgment.