## FLORIED H. HILLERS *vs.* ELIZABETH V. TAYLOR.

*Action for Alienation of the Affections of Plaintiff's Husband—Evidence—Instructions to the Jury.*

In action by one woman against another for alienating the affections of plaintiff's husband, evidence of statements made to the plaintiff by her husband relating to the wishes of the defendant, or of declarations made by her is inadmissible. Such evidence is either hearsay, or a mere expression of opinion made out of the presence of the defendant.

The defendant in an action for alienating the affections of plaintiff's husband, put in evidence a paper signed by the husband, aged fifty-two, by which he declared that he adopted as his daughter, the defendant, aged thirty-five, who was another man's wife. *Held*, that, although this document was put in evidence·without objection and could therefore be considred by the jury, yet it was proper to instruct them, at the instance of the plaintiff, that there was no evidence of any legal adoption of the defendant, and that the paper professing to be an act of adoption was no defense to the action.

Under a count in a declaration alleging that the defendant debauched and had carnal intercourse with plaintiff's husband, thereby alienating his affections, it is proper to instruct the jury that it is not necessary for the plaintiff·to prove any one conclusive act of illicit intercourse between the parties, but they may consider the opportuny for the commission of the act, the conduct of the parties and all the circumstances, and then determine from the whole·of the testimony whether the parties were guilty of illicit intercourse.

In such action a prayer offered by the defendant is erroneous which instructs the jury that in order to establish the charge of adultery by the defendant with the plaintiff's husband, the circumstances must lead to it, not only by a fair inference, but as a necessary conclusion.

*Decided May 15th, 1908.*

Appeal from the Circuit Court for Prince George's County (MERRICK, J.), where there was a judgment on verdict for plaintiff for $10,000.

*Plaintiff's 3rd Prayer.*—The jury are instructed that in determining the amount of the damages, if they should find for

the plaintiff, they should take into consideration the social position of the parties, the pecuniary situation of the defendant, and award the plaintiff such an amount as will reasonably and fairly compensate her for the loss of the affection, society of the husband of the plaintiff, together with the mental anguish and disgrace which she has sustained, and the loss of the support of her husband. (*Granted.*)

The cause was argued before BOYD, C. J., PEARCE, SCHMUCKER and WORTHINGTON, JJ.

*J. W. McNeill*, for the appellant.

*George P. Hoover, T. Van Clagett* and *S. Marion Peach*, for the appellee, submitted the cause on their brief.

SCHMUCKER, J., delivered the opinion of the Court.

This appeal is from a judgment of the Circuit Court for Prince George's County against the appellant for damages for alienating the affections of the appellee's husband and pursuading him to abandon her. There are three bills of exceptions in the record of which two are to rulings on the admissibility of evidence and the third is to the Court's action on the prayers.

The declaration contains two counts, the first charging the defendant with criminal conversation with the appellee's husband resulting in the alienation of his affections, and the second charging her with having caused the alienation and abandonment by wrongful and wicked persuasion and the practice of alluring arts upon him well knowing him to be the husband of the appellee.

There is evidence in the record tending to show the following facts. The appellee and her husband, Albert A. Taylor, were married at Ocean Grove, New Jersey, in the year 1877, and lived happily together in that vicinity until the spring of 1905, when the husband came to Contee in Prince George's County and went into the sand and gravel business with the Contee Sand and Gravel Company. He remained engaged in that business at Contee until the institution of this suit board-

ing and lodging at the house of the appellant Floried H. Hillers and her husband Charles W. Hillers.   In May, 1905, the appellee, Mrs. Taylor, paid a visit of one day to her husband at Mrs. Hiller's house in Contee, and on June 18th she went there again to visit her husband and remained until July the 5th, when she returned to her home in New Jersey upon the representation made by her husband that it would be too hot for her to remain in Contee for the remainder of the summer. There is further evidence tending to prove the existence of intimacy and improper relations between Taylor and Mrs. Hillers during his residence at her house and that he lost his affection for his wife and abandoned her.

The two exceptions to rulings on evidence rest on similar grounds and will be considered together.   The appellee as plaintiff below to support the issue on her part testified that, on June the 18th, 1905, on her second visit to her husband at the Hillers' residence in Contee, when she was about to retire with him for the night she noticed that there was but one bed in the room assigned for her occupancy, and asked him why two beds could not be put in the room as prior to his coming to Contee they had always been in the habit of occupying separate beds in the same room.   He replied that he was going to sleep in another room.   Thereupon the plaintiff's counsel put to her the question : "State what reason your husband assigned for not having two beds in the room ?" and she answered "He said Mrs. Hillers objected to it."   The defendant by his counsel objected to the question and answer on the ground that it was hearsay evidence and consisted merely o the opinion of Taylor expressed out of the presence of the defendant, and moved to strike out the answer, but the Court overruled the objection and motion and admitted the evidence the counsel for the plaintiff stating that it was offered solely for the purpose of showing the state of Taylor's feelings toward his wife at that time.   To that ruling of the Court the defendant took her first exception.

The second exception was taken to a similar ruling made by the Court under the following circumstances.   The plaintiff •

further testified in her own behalf that early in November, 1905, after having again called to see her husband at the defendant's house at Contee station and failed to find either him or the defendant there, she went to the home of her son in Baltimore City where her husband came to see her on the following day.    That at an interview had with her husband at that time she implored him to return to her, that they might live together as she reminded him that they had done happily for thirty years theretofore, and offered to go to Contee with him and to buy a lot there and build a house on it in which they could live, but he replied that she could not buy any property in the vicinity of his works.    That she then offered to go and live with him at the home of the defendant but he replied that "Mrs. Hillers (the defendant) did not want her there." To this statement of the witness the defendant objected and moved the Court to strike it out for the same reasons relied on in reference to the testimony forming the basis of the first exception but the Court overruled the objection and motion and allowed the testimony to go to the jury upon the same ground mentioned in the first exception.

In our opinion the learned Judge below erred in allowing the testimony covered by these two exceptions to go to the jury.    Assuming that Taylor made the statements to his wife ascribed to him in her testimony his conduct in so doing was undoubtedly indicative of indifference toward her on his part and if he were the defendant in an action in which the state of his feelings toward her were material to the issue the statements might be admissible against him.    But the present suit is not against him, it is against Mrs. Hillers and the alleged statements profess to describe her attitude toward the plaintiff. If they be regarded as expressions of Mr. Taylor's opinion of what were the wishes or preferences or attitude of Mrs. Hillers toward the plaintiff, as they seem to us to have been, they should have been stricken out under the rules of evidence which ordinarily exclude the opinions of witnesses, other than those of experts, especially when unaccompanied by a statement of facts affording a reasonable foundation for them.

The law regards such evidence as being irrelevant and deriva-
tive in its nature and not furnishing safe or reliable aid to the
jury in arriving at a proper conclusion. We have had occa-
sion to discuss and apply the rule against the admissibility in
evidence of non-expert opinions in the recent cases of *Tall* v.
*Steam Packet Company*, 90 Md. 258; *Tucker* v. *Johnson*, 89
Md. 477, and the *Berry Will Case*, 93 Md. 579, etc., where
our views upon the subject have been fully expressed.

If on the other hand the statements of Taylor, thus admitted
in evidence by the Court below, be considered as repetitions
of declarations made to him by the defendant they were inad-
missible against her under the fundamental rule against the
admission of hearsay evidence, for it is not claimed that they
were made in her presence and hearing. That rule of evidence
has also received full consideration at our hands in the recent
case of *Baumgartner* v. *Eigenbrodt and wife*, 100 Md. 512,
under circumstances not unlike those presented by the record
now before us. In that case Eigenbrodt and his wife were
sued for damages for an alleged abduction of a female infant
about seventeen years of age. The Court there refused to
admit in evidence for the plaintiff statements alleged to have
been made to the witnesses out of the presence and hearing of
the defendants by the infant in reference to promises made to
her by one of the defendants to induce her to go to live with
them, and we affirmed the ruling upon an appeal.

The appellee, on her brief filed since the hearing of the
appeal, contended that as the evidence excepted to was not
offered and admitted for the purpose of proving the miscon-
duct of the defendant with the plaintiff's husband or the alien-
ation of his affections, but solely for the purpose of showing
the state of his feelings toward his wife and the purpose for
which it was offered was openly stated in the presence of the
jury, it was admissible for that purpose under a well defined
exception to the rule against hearsay which makes such evi-
dence competent, in suits like the present one, to show the
state of feelings existing between the husband and wife. The
brief refers in support of its contention to a number of cases

in which letters or communications between husband and wife were held to be competent evidence for that purpose in suits for alienation of affections. We have examined all of those cases and many others in which the opposite view has been maintained by the Courts, there being an evident want of harmony upon the subject in different jurisdictions. The subject has received careful consideration in secs. 1730 and 1768 of vol. 3 of *Wigmore on Evidence* and more recently in sec. 1730 of the Supplement to that work where the rule is stated to be, from an examination of the authorities, that in alienation suits the utterances of the alienated spouse are admissible to show the result on his or her state of mind of the efforts and influence of the defendant which have otherwise been proven. In that respect the defendant's acts and utterances as recited by the spouse are not hearsay and are admitted not as evidence of the truth of the statements but of the mental state and motives of the party making them without reference to the truth of the statements themselves.

Vol. 3, section 1648, of *Elliott on Evidence*, states the rule to be that "Declarations or letters tending to show the feeling existing between the plaintiff's consort and the defendant may be shown, but it must first be shown that the defendant was responsible for the affection manifested for him  *   *   * Declarations or letters of the wife when the husband is plaintiff, relating to the words or acts of the defendant and tending to prove the wilful interference of the defendant cannot be used against the defendant as they are merely hearsay and would be dangerous because of possibility of collusion between husband and wife." Where, as in the case now before us, the wife is plaintiff the rule would apply with equal force to declarations or letters of the husband.

When the declarations of the husband excepted to in the present case were offered in evidence it had not been otherwise shown that the defendant was responsible for the husband's state of mind toward his wife, although testimony tending to establish that fact was afterwards introduced. Nor do we think that declarations of the husband, Taylor, which were

admitted in this case should be regarded as recitals of acts or utterances of the defendant or as more than expressions, perhaps insincere expressions, of his opinions as to Mrs. Hillers willingness to permitt the plaintiff to reside in her house at Contee, or to arrange the furniture in the house to suit the plaintiff's preferences. The state of Taylor's feelings toward his wife were plainly shown by his refusal to occupy the same room with her or to continue to live with her and his declarations formed but a faint and unimportant addition to the evidence on that branch of the case. They did however tend to prejudicially affect the defendant in the eyes of the jury, although they were confessedly incompetent to prove the acts with which she was charged in the declaration because made out of her presence and hearing, and they should for that reason have been excluded.

In *Whitman* v. *Eghert*, 24 N. Y. App. Div. 374, which was favorably commented on in *Billings* v. *Albright*, 66 App. Div. 246, it was held that a letter written by the husband to the wife indicating his state of feelings toward her was not competent evidence in an action brought by her for the alienation of his affections, because, although the letter would ordinarily have been competent to show his state of feelings toward her, it was of such a character as to tend to prove the wrongful acts of the defendant for which purpose it was clearly not competent. It was held to constitute merely an *ex parte* narrative of facts and opinions and therefore inadmissible. The reasoning used in that case applies with equal force to the one before us.

At the trial below the defendant to maintain the issue on her part put in evidence, without objection from the plaintiff, a paper writing, purporting to be a formal adoption of her by the plaintiff's husband, Albert A. Taylor, as his child, of which the following is a copy.

"(Adoption Paper.)

I, Albert A. Taylor, of Contee, Prince George's County, Maryland, after fully considering the responsibilities, legal and otherwise, that would result from the formal adoption of Floried H. Hillers, wife of Charles Hillers, of Contee, Prince

George's County, Maryland, as my daughter, and having ob-
tained the consent of both the said Floried H. Hillers, and her
husband, Charles W. Hillers, to her formal adoption, do
hereby formally adopt the said Floried H. Hillers, as my
daughter, desiring and wishing to confer upon her by this
legal adoption, all such rights as would and do pertain to any
of my own children and heirs at law.

In evidence of which I hereto set my hand and seal this
fifth (5th) day of July, 1905.

Witness:                    Albert A. Taylor. (Seal.)"

The written assent of the defendant, Mrs. Hillers and her
husband, to the alleged adoption is appended in the original
document. Taylor had already when called as a witness for
the plaintiff, testified on cross-examination that the reason he
had the adoption papers drawn up was that he was going
around with the defendant and did not want people talking
about them. It appears from the evidence that at the date of
the execution of the so called adoption paper the plaintiff
was fifty-three years of age and her husband was fifty-two
and Mrs. Hillers was thirty-five years old. It is difffcult
for a reasonable mind to take a serious view of this so
called adoption of the defendant by the plaintiff's husband,
but as the paper was put in evidence without objection the
jury were entitled to consider it for what it was worth.

At the close of the testimony the plaintiff offered three
prayers all of which the Court granted. The defendant offered
five prayers of which the Court granted all except the fifth
which was rejected.

The plaintiff's first prayer asks the Court to instruct the jury
"that there is a legal insufficiency of evidence to prove any
legal adoption of the defendant Floried H. Hillers by Albert
A. Taylor, the husband of the plaintiff, and that the jury are
not to take into consideration any evidence of said adoption as
a defense in this case."

There was no error in granting that prayer. The adoption
of children, although a practice of great antiquity recognized
by the civil law throughout its entire history and observed in
countries whose jurisprudence is founded on that law, was un-

known to the common law and exists in States, which have in
herited that system of jurisprudence, only by virtue of statute.
*A. & E. Encycl.*, vol. 1, p. 726; 1 *Cyc.*, 917.

Sections 68 *et seq.* of Article 16 of the Code of this State
authorize Courts of equity, upon proper applications, to pass
decrees declaring the adoption of minor children, and most of
the other States of the Union have made suitable provision by
statute for the same purpose, but we are unaware of any pre-
cedent in this State for the adoption of an adult as a child by
any such means as that employed by the present defendant to
give the appearance of regularity to his association with Mrs.
Hillers. Assuming that it would be competent for two adults,
each being *sui juris*, to enter into a contract definitely under-
taking for a good consideration to assume toward each other
the reciprocal duties and obligations which the law attaches to
the relation of parent and child, it would be *contra bonos mores*
to hold that the paper put in evidence in this case, and made
under the circumstances testified to by Taylor himself, afforded
any defense to the action. The uncontradicted evidence shows
that the time of the execution of the paper Taylor was living
apart from his own wife who was anxious to be with him, and
he testified as we have already said that he had it drawn up
because he was going about with the defendant, who was
another man's wife, and he did not want people talking about
them. Even though the paper went in evidence without ob-
jection and could therefore be considered by the jury it was
proper to instruct them that it furnished no legally sufficient
evidence of any legal adoption of Mrs. Hillers by Taylor as
his child.

The plaintiff's second prayer, which was addressed to the
plaintiff's right to recover under the first count of the declara-
tion for debauching and having carnal intercourse with her
husband thereby alienating his affection, is as follows: The
jury are instructed that in order for the plaintiff to recover
damages against the defendant under the first count of the
declaration it is not necessary that the plaintiff should prove
any one act of illicit intercourse, which is conclusive of guilt,

but the jury must consider the opportunity for the commission of the act, the conduct of the parties and all the circumstances and then determine from the whole of the testimony whether it should convince unprejudiced and cautious persons of the guilt of the parties, and if upon a consideration of all the evidence in the case the jury are satisfied of the commission of one act of illicit intercourse then their verdict should be for the plaintiff.

That prayer is a substantial paraphrase of the portion of our opinion in *Shufeldt* v. *Shufeldt*, 86 Md. 528, which discussed the adequacy of the evidence in that case to justify a decree in equity for a divorce *a vinculo* for adultery.   It fairly states the law touching the character of evidence requisite to prove the carnal intercourse which constituted the gravamen of the first count of the declaration and there was no error in granting it.   The plaintiff's third prayer stated the measure of damages in the usual form and was also properly granted.

The defendant's fifth prayer, which was rejected, asked the Court to instruct the jury that in order to establish the charge of adultery by the defendant with the plaintiff's husband, the circumstances must lead to it, not only by a fair inference, but as a necessary conclusion; appearances equally capable of two interpretations, one an innocent one, will not justify the presumption of guilt.

That prayer standing by itself contains an incomplete statement of the law on the subject to which it is addressed.   In *Loveden* v. *Loveden*, 4 Eng. Ecc. 461, which was cited by us in *Kremelberg's case*, 52 Md. 555, it was said that where the commission of adultery is sought to be inferred from circumstances the latter must lead to the conclusion of guilt by fair inference as a necessary conclusion, but both in Kremelberg's case and in the later one of *Shufeldt* v. *Shufeldt, supra*, we said that no general rule as to what facts shall and what shall not constitute proof of adultery can be laid down but the jury must consider, the conduct of the parties, their opportunities for the commission of the act and all of the circumstances of the case and then determine whether it should convince an

unprejudiced and cautious mind of the guilt of the parties. The burden of proof in an action like this is of course upon the plaintiff but the degree of evidence requisite to establish the commission of the act of adultery is substantially the same as in divorce cases.    The prayer might have been granted with propriety in connection with the plaintiff's second prayer but as an independent instruction it was properly rejected.

For the error of the learned Judge below in the rulings on evidence presented by the first and second exceptions the jndgment appealed from must be reversed and a new trial awarded.

> *Judgment reversed with costs and case*
> *remanded for a new trial.*