## KREAGER v. KREAGER.

[No. 24,170.    Filed June 8, 1922.]

1. EVIDENCE.—*Alienation of Husband's Affections.—Statements by Husband to Wife in Absence of Defendant.—Competency.*— In a wife's action for the alienation of her husband's affections, testimony by plaintiff as to statements made to her by the husband, in the absence of defendant, as to what defendant had said to him on a number of occasions during the period it was claimed his affections were being alienated, was hearsay, and was not evidence of the truth of the facts stated by the husband. p. 247.

2. WITNESSES.— *Competency.— Alienation of Husband's Affections.—Competency of Wife to Testify as to Statements Made to her by Husband.*—Under §520, cl. 6, Burns 1914, §497 R. S.

1881, making a husband and wife incompetent to testify as to communications made to each other, plaintiff cannot, in an action for the alienation of her husband's affections, testify as to declarations made to her by her husband concerning his relations with defendant before plaintiff and her husband were divorced, even though such declarations would have been admissible, if testified to by a competent witness, as tending to show the husband's loss of affections.  pp. 247, 249.

3.  APPEAL.—*Review.—Admission of Evidence.—Prejudicial Error.*—In a wife's action for the alienation of her husband's affections, the erroneous admission of testimony by plaintiff as to statements made to her by her husband as to his relations with defendant, *held* prejudicial to defendant.  p. 249.

4.  HUSBAND AND WIFE.—*Alienation of Husband's Affections.— Evidence.—Declarations of Husband in Absence of Defendant. —Competency.*—In a wife's action for the alienation of her husband's affections, testimony that, at a time when defendant was a guest at the home of plaintiff and her husband, the husband stated to the witness that he would take defendant in a buggy to the midnight train and requested the witness to say nothing about the matter, which statement was not made in the presence of defendant nor communicated to her, who remained until the next day and walked to the railroad station with plaintiff, was inadmissible in behalf of plaintiff, being a mere declaration of purpose formed by the husband, not communicated to defendant or acted upon by her or the husband.  p. 250.

5.  HUSBAND AND WIFE.—*Alienation of Husband's Affections.— Evidence.—Ex Parte Declarations of Husband.*—In a wife's action for the alienation of her husband's affections, testimony of plaintiff's son as to a statement made by his father that he would not live with plaintiff, was not competent to show the husband's lack of affection for plaintiff, where such statement did not accompany any act and the husband continued to live with plaintiff for some time thereafter.  p. 250.

6.  HUSBAND AND WIFE.—*Alienation of Husband's Affections.— Evidence.— Ex Parte Declarations of Husband.*— In a wife's action for the alienation of the affections of her husband, it was not error to exclude testimony, offered on behalf of defendant, as to a statement by the husband to a justice of the peace that he intended to have his wife committed to an asylum for the insane, there being no evidence that the husband took any action to have his wife declared insane.  p. 251.

7.  HUSBAND AND WIFE.—*Alienation of Husband's Affections.— Evidence.—Testimony by Defendant as to Relations with Husband.*—In an action by a wife for the alienation of her hus-

band's affections, as to questions asked defendant testifying as a witness in her own behalf, whether she "received the attention" of plaintiff's husband or "accepted him as a suitor" prior to his divorce from plaintiff, the questions not being limited to an inquiry as to her intention in what she did or said, it was not error to sustain objections to such questions, though it might not have been error to overrule them.   p. 251.

8. EVIDENCE.— *Admissibility.— Declarations of Conspirator.— Absence of Proof of Conspiracy.*—In a wife's action for the alienation of the affections of her husband who had married defendant after obtaining a divorce from plaintiff, statements by the husband that he would induce plaintiff to commence an action against defendant for alienation of affections were incompetent for defendant, in the absence of proof that he actually entered into a conspiracy with his wife to have the suit instituted, since it is only after *prima facie* proof of the existence of a conspiracy that statements made by one of the alleged conspirators are competent evidence against another. p. 252.

9. HUSBAND AND WIFE.—*Alienation of Husband's Affections.— Evidence.—Admissibility.—Evidence as to Defendant's Intent in Relations with Husband.*—In an action by a wife for the alienation of her husband's affections, where defendant admitted that on a number of occasions she had driven with the husband, but testified that once she drove him around the block because he had expressed admiration for her horse and asked to ride behind it and at other times, after he had been divorced from plaintiff, took him along merely to hold the horse while she was visiting her patients, evidence offered by defendant, on her intent in driving with the husband, that on a number of occasions patients in her hospital, both men and women, had ridden with her in her buggy was properly excluded as being immaterial, since it had no probative value as regards the question of her intent in her associations with the husband.   p. 252.

From Elkhart Superior Court; *James L. Harman,* Judge.

Action by Martha H. Kreager against Anna Grover Kauffman Kreager.   From a judgment for plaintiff, the defendant appeals.   (Transferred from the Appellate Court under §1394, cl. 2, Burns 1914, Acts 1901 p. 565.) *Reversed.*

*L. L. Burris* and *Deahl & Deahl,* for appellant.

*Drummond & Drummond, Church & Chester* and *Proctor & Cawley,* for appellee.

EWBANK, J.—A verdict was returned and judgment rendered for $5,000 damages in favor of appellee against appellant, in an action for the alleged alienation of the affections of appellee's husband, Henry Kreager, resulting in his divorce from appellee and marriage to appellant.

The only error assigned is the action of the trial court in overruling appellant's motion for a new trial; and the only reasons for a new trial which have been presented for consideration on appeal relate to the admission and rejection of certain evidence.

The uncontradicted evidence showed that appellant first met Henry Kreager in December, 1905, when appellee, who was then his wife, was being given medical treatment by appellant, at a private hospital which she conducted; that appellee and said Kreager separated March 8, 1910; that they were divorced April 2, and that he married appellant July 30 the same year. Witnesses called by appellee further testified that many times from August, 1909, to and including March, 1910, they saw appellant and Henry Kreager together in Goshen, riding in a buggy and on an interurban car, and talking at her office. One witness stated that he saw them driving in a buggy in Goshen two or three times a week in January, February and March, 1910, and another witness testified that she met them together in Chicago in 1909. But appellant denied all of these statements, and testified that it was not until the summer of 1910 that she drove about in the buggy with Henry Kreager or rode on an interurban car with him, and that the meeting with the witness in Chicago was in August, 1910, after appellee had been divorced from him

and he had married appellant. And a number of witnesses testified that he was not at her place in Goshen during the winter before the divorce was granted. There was no evidence that he was in Goshen between the time when appellee introduced him to appellant, in December, 1905, and the autumn of 1909, except a few times when appellee (his wife) was there, and a few times in the fall of 1908, when his mother and daughter were there, being treated by appellant. And appellant and other witnesses testified that she was ill for thirteen months in 1906 and 1907, and that from the middle of April to the middle of September, 1907, she was confined to her room, so ill that nobody except her physicians, her nurse, and her pastor were permitted to see her; and there was no evidence to the contrary except appellee's statement that after an interval of a year without treatments she resumed taking treatments from appellant in May, 1907, that she stayed a week and a half, and then took no more treatments until October, 1907.

Appellee was permitted, over objections and exceptions by appellant, to answer nearly a hundred questions by testifying to what her (then) husband said to her and she said to him in the absence of appellant, to the effect that he had made frequent trips to Goshen, and had seen and talked to or ridden in a buggy with appellant while there, and that appellant had told him appellee was insane, and had a loathsome disease, and was guilty of "self-abuse," and must come back to appellant for treatments, and that he wanted appellee to invite appellant out to their home for Christmas dinner and at other times (which appellee did), and declared a purpose to drive appellant to the station in a sleigh when she went home after the Christmas dinner (which he did not do). She further testified that between January 1, and April, 1906, he made "lots of trips" away

from home, and in the two weeks before the first of April that year he was away "quite often," and that during the year 1907 he was away, and that "about once a week, anyway," he said on his return that he had stopped in Goshen and had seen and talked to appellant.

These statements did not accompany any acts of which they were explanatory, but were mere recitals of what he said had happened a few days or a few weeks

1. before, or statements of the wishes and desires of the husband or of appellee when they were conversing.

So far as this evidence related to Henry Kreager having met appellant it was hearsay. Nothing that appellee heard him say in the absence of appellant could be evidence of the truth of what he so stated.

But appellee insists that it was competent for other purposes even if incompetent as proof of what appellee testified her husband had told her. A statute

2. provides that "The following persons shall not be competent witnesses * * * Husband and wife as to communications made to each other." §520, cl. 6, Burns 1914, §497 R. S. 1881. To the "persons who are competent to testify in civil actions," the Criminal Code adds: "The party injured by the offense committed," in declaring who are competent witnesses in prosecutions for crime. §2111 Burns 1914, Acts 1905 p. 584, §235.

But in civil actions the statutory prohibition against a husband or wife testifying as to "communications made to each other" is not modified by any other statute, though the courts have engrafted on it the exceptions that where the communication was made in the presence and hearing of another or was merely of a fact known to a large circle of acquaintances, or was made with the obvious purpose and expectation that it would be

communicated to others, it was not within the privilege, if otherwise admissible. *Mercer* v. *Patterson* (1872), 41 Ind. 440, 444; *Schmied* v. *Frank* (1882), 86 Ind. 250, 257; *Sedgwick, Admr.*, v. *Tucker* (1883), 90 Ind. 271, 281; *Beitman* v. *Hopkins* (1887), 109 Ind. 177, 9 N. E. 720.

The rule declared by the statute above quoted has been greatly modified in some other states by the provisions of their statutes, but has remained unchanged in Indiana since 1881. As then enacted it superseded a statute which provided that "husband and wife as to communications made to each other during marriage shall not, in any case, be competent witnesses, unless with the consent of the party making such confidential communications," with certain reservations denying the right to testify in some cases even with such consent. Acts 1879 p. 245.

That statute, which remained in force only two years, until superseded by the present statute containing no provision for admitting such testimony by consent, amended one enacted in 1867, which provided that except in cases of assault and battery on the wife, "husband and wife as to matters for or against each other, or as to commmunications made to each other during marriage * * * shall not in any case be competent witnesses, unless with the consent of the party making such confidential communication." Acts 1867 p. 226, §2; See also, Acts 1867 p. 99, §1.

Prior to that for fifteen years the statute had provided as follows: "Husband and wife are incompetent witnesses for or against each other, and they cannot disclose any communication from one to the other, made during the existence of the marriage relation, whether called as a witness while that relation exists or afterward." 2 R. S. 1852, p. 82, §240.

It is evident from the foregoing that what our statute

now contains and what it omits are not due to inadvertence, but that, after repeated trials of other provisions during a period of thirty years, it expresses the matured judgment of the legislative department of the state, which has met the approval of succeeding legislatures during the forty years that it has been in force. Therefore the testimony of appellee as to statements made by her husband to her before they were divorced was not admissible for any purpose in a civil action against a third person, and permitting her to detail statements made by him in the absence of appellant as to where he had been, and whom he had seen, and what that person said, after his return from frequent trips during a period of years, was error.

That it was prejudicial as tending to make the jury believe appellant was seeing the husband at times when she denied meeting him, and to make them believe he had some secret understanding with appellant, is obvious.

3. lieve he had some secret understanding with appellant, is obvious.

Appellee was permitted to testify, without objection, that Henry Kreager spoke angrily to her, and swore at her, and called her "crazy," and otherwise manifested a lack of loving regard for her before she was divorced. And counsel insist that her testimony that he said appellant had told him she was insane, and was nervous because of her own misconduct, and that he was seeing and talking to appellant every few days, and was frequently driving with her in a buggy, were also admissible to prove that he had ceased to love her. We need not consider and do not decide whether any of these statements had a tendency to prove that her husband's affection was waning when he made them, if they had been testified to by competent witnesses. Not all of them had such a tendency. And appellee was not competent to prove "communications" by her husband, made in the confidence of the marriage

relation, whatever might have been admissible if testified by competent witnesses.   But see, *Hillis* v. *Taylor* (1908), 108 Md. 148, 69 Atl. 715.

A witness who had been a suitor for the hand of appellee's daughter was permitted to testify that when appellant was a guest at the home of appellee and
4.  her husband, at the time the daughter graduated from high school, he told the husband that he would take appellant to the midnight train in his automobile, but the husband said he would take her in a buggy and that the witness should say nothing about it. He further testified that only he and the husband were present.   But the undisputed evidence was that appellant did not leave on the midnight train, but stayed until morning, and then she and appellee walked to the station together, where she boarded the train for home. The admission of said testimony was error.   It was a mere declaration of a purpose formed by the husband not communicated to appellant nor acted upon by the husband or appellant, which had no probative force as against appellant.

Tony W. Kreager, a son of appellee and Henry Kreager, was permitted to testify, over objection, that he had a conversation with his father in the fall
5.  of 1909, when appellant was not present, in which his father said that appellee was diseased, and that he refused to sleep with her and would not live with her.   These statements were not shown to have accompanied any act, and the undisputed evidence was that he did live with her until March 8, 1910.   Appellee seeks to justify the admission of this evidence as tending to prove that the husband, when he made the statements, no longer loved his wife.   But there is a very essential difference in the probative value of the acts of a husband and his behavior toward his wife indicating his regard or lack of regard for her, and his *ex parte* dec-

larations as to what he will or will not do while he is continuing to do the opposite. Evidence of such declarations was not competent.

Appellant produced a witness who testified that he was a justice of the peace at the town where appellee lived with Henry Kreager from 1900 to 1904, and

6. that in the latter part of 1903 Henry Kreager came to him to have an "inquest on the mind of Helen Kreager" (Appellee). Offered testimony of this witness that at that time, in the absence of appellee, Henry Kreager said that appellee was a "crazy loon," and that he was going to send her to the insane asylum and keep her there permanently, was excluded, and appellant complains of this ruling. This was not error. The same reasons which require the exclusion of testimony concerning the *ex parte* statements of the husband when offered by the appellee justify their exclusion when offered by the appellant.

No evidence was introduced or offered showing anything he did in beginning and prosecuting the insanity inquest, except that he came to the justice of the peace to have the inquest held. That fact afforded no basis for proving his *ex parte* statements to the justice of the peace as to his wife's mental condition and his intention.

Appellant complains that when testifying as a witness she was not permitted to answer questions asking whether she "received the attention" of Henry

7. Kreager or "accepted him as a suitor," before the date of his divorce from appellee. It was not error to sustain objections to these questions, though it might not have been error to overrule them. They were not limited to an inquiry as to her intention in what she did or said.

Appellant produced a witness who testified that not long before the date (August 22, 1911) when this ac-

8. tion was commenced he met Henry Kreager at Milford Junction, south of where appellant lived and they rode east on the same train to where appellee lived. Appellant offered to prove by the witness that at that time he had a conversation with Henry Kreager in which Kreager said he was going over to persuade appellee's children to induce her to sue appellant for $15,000 damages for alienation of his affections. And appellant offered to testify as a witness that about the same time Henry Kreager left her home and made like statements to her as to where he was going and what he intended to do. But no evidence was introduced or offered tending to show that he really had anything to do with the commencement of this action. A conspiracy cannot be proved by the *ex parte* statements of one of the supposed conspirators. It is only after *prima facie* proof of the existence of the conspiracy that statements made by one of the alleged conspirators are competent evidence as against the other. These rulings were not erroneous. *Wolfe* v. *Pugh* (1884), 101 Ind. 293, 306; *Ford* v. *State* (1887), 112 Ind. 373, 383, 14 N. E. 241; *Kahn* v. *State* (1914), 182 Ind. 1, 5, 105 N. E. 385.

9. Appellant testified that on one occasion when she admitted having driven Henry Kreager around the block in her buggy she did it because he expressed admiration for her horse and asked to ride behind it, and that when she admitted driving with him at other times, after he was divorced, she took him along merely to hold the horse while she called on her patients. No direct testimony which she offered to give as to her intent was excluded. But the court refused to permit her and other witnesses to testify that at other times a number of the patients in her hospital, both men and women, drove with her about the streets of Goshen in her buggy. Appellant insists that such evi-

dence was competent on the question of her intent in driving with Henry Kreager. We do not think so. Kreager was not a patient in her hospital at any time. And while it was competent for her to state with what intent she took him driving at the times when she did, her conduct toward her patients could throw no light on her intent in driving him before he was divorced and when neither he nor his wife was under treatment at the hospital, if she really did so, which she and her witnesses denied, but which appellee's witnesses testified was the fact.

The judgment is reversed with directions to sustain appellant's motion for a new trial.