## THE BALTIMORE LIFE INSURANCE CO. *vs.* JOHN F. HOWARD.

*Life Insurance—Waiver of Forfeiture of Policy for Non-Payment of Premiums—Collection of Premiums After Default—Knowledge by Insurer of Cause of Forfeiture.*

In some instances the payment and acceptance of premiums after a default operates to waive a forfeiture of a policy of life insurance arising from such default, but when the policy provides that the payment of an overdue premium shall not be treated as a waiver of a forfeiture, then such payment is not a waiver, unless the stipulation against giving it such effect is itself waived.

An industrial life insurance policy provided for the payment of certain premiums on each and every Monday during the life of the insured. A condition in the policy stipulated that if the weekly premiums should be due for more than four successive Mondays, then the policy would thereby become lapsed and could be revived only by the payment in full of all premiums due and the passing by the insured of a medical examination, and that payment without such examination after a lapse would only entitle the policy holder to a return of the same. Another condition prohibited all agents, other than directors of the society, from altering contracts or waiving forfeitures. At a time when more than four weeks premiums were due, an agent of the company together with a superintendent called upon a policy holder and collected the premiums upon giving the assurance that "it would be all right." Notwithstanding this default collections of premiums from the insured continued to be made, and the reports of the inspectors made to the officers of the company showed that these collections had been made after the arrearages, alleged in the suit on the policy to have caused the forfeiture, had been settled. *Held,*

1st. That the act of the insurer in sending its agents to make collections of premiums from the policy holder after the instalments which had been in default had been paid up is evidence to show that the premiums were collected with a view of keeping a live policy in force ; that the insurer considered that there was an obligation on the part of the insured to pay and that such act constitutes a waiver of all the provisions relating to the forfeiture of the policy.

2nd. That an instruction to the jury declaring that there was a waiver of the forfeiture if the officers of the company knew or could have known that they continued to collect dues on the policy after the insured had once been more than four weeks in arrear, is not open to the objection that the evidence does not show actual knowledge by the officers of the existence of the causes producing a forfeiture, because the evidence does show that the inspectors' reports setting forth the times of payment were returned weekly to the officers of the company and it was their duty to know the facts of the case.

Appeal from the Baltimore City Court (STOCKBRIDGE, J.)

The cause was argued before McSHERRY, C. J., FOWLER, BRISCOE, PAGE, BOYD, PEARCE, SCHMUCKER and JONES, JJ.

*Alfred S. Niles* and *Oscar Wolff,* for the appellant.

The question is : Do the alleged statements of Superintendent Rogers, and the collection of certain premiums after the policy had become in arrears for four weeks, without a scintilla of proof that either of these facts was known to any director

of the company, amount to legal evidence of waiver of the forfeiture?

The policy itself provides for this very case. Under clause 11 it is expressly provided that no statement which Superintendent Rogers could make, could "waive a forfeiture." Under clause 16 it is expressly stated that the receipt of payment after the policy has been four weeks in arrears will not waive the forfeiture, but will simply entitle the policy holder to a return upon demand of the money so paid. Both of the acts, therefore, on which the plaintiff relied to prove a waiver of the forfeiture are expressly declared by the policy itself not to have this effect.

There is a class of cases, of which *Mallette* v. *British Ass. Co.*, 91 Md. 471, is an example, where the insurers have been held "to have waived the right to receive the premium, as a condition upon which the risk was to attach, upon the ground that the assured would have been otherwise misled and deceived." *Bradley* v. *Potomac Fire Ins. Co.*, 32 Md. 115. It is also true that in order to prevent the insured from being so misled and deceived the Court will, under certain circumstances, hold the companies estopped by reason of facts arising during the currency of the contracts. *Maryland Life Ins. Co.* v. *Gusdorf*, 43 Md. 514.

Indeed, it may be well admitted as the result of the authorities : (1) That a delivery of the policy without payment of premium will waive a condition that the policy will not take effect unless the premium has been paid. (2) That conduct on the part of a chief officer who can fairly be said to represent the company, upon which conduct the insured relies, but which conduct is directly forbidden by the provisions of the policy, cannot, by a reference to those provisions, be made nugatory, so as to work a fraud upon the insured. But, on the other hand, we think that all the authorities agree that, when the policy has been delivered to, and is in the possession of, the insured, when it provides which officers shall, and which shall not, represent the company so far as waiving its provisions is concerned, and when certain acts on the part of

the insured are provided for in the policy and their effect stated, then no other effect than that so provided for in the policy, can be given to those acts, by means of any statements or actions of those employees of the company who are expressly stated not to have the power of waiver.

In these cases there is no room to apply the principle of estoppel, for it is then the fault of the insured if he is misled or deceived. *Turnbull* v. *Home Fire Ins. Co.*, 83 Md. 323.

When the policy covers and provides for the effect of the act in point, "the question is simply one of construction, depending on the terms of the contract between the two parties." In *Mallette* v. *British Ass. Co.*, 91 Md. 471, this Court assigns as one of the reasons for holding that there was a waiver of payment of full premium in that case that Mallette's policy *did not*, as did the policy in *Bradley's case*, 32 Md. 108, *provide* that the company should not become liable until the premium in full therefor was actually paid. And in *Stockley* v. *Benedict*, 92 Md. 332, this Court, only seven months after the Mallette case, had the case presented to it where, as here, the policy had been delivered and a waiver was claimed to result from acts, the effect of which was provided for in the policy. In that case it was distinctly held that no waiver can be inferred in the face of a plain and express condition and agreement in the policy itself. See also *Hartford F. I. Co.* v. *Keating*, 86 Md. 147; *Busby* v. *North American Life Ins. Co.*, 40 Md. 572; *May* v. *New York Safety Reserve Fund Society*, 14 Daly, 389; *Dungan* v. *Mutual Benefit Ins. Co.*, 46 Md. 469; *Knickerbocker Ins. Co.* v. *Dietz*, 52 Md. 16.

We fail to perceive how the entry upon the inspection books that money had been received upon this policy can affect the matter. In the first place there is no proof that any of the higher officers of the company had actual knowledge of the condition of this particular policy. And "the principle is well settled that a party will not be held to have waived his rights or to be estopped by his conduct and acts, unless it is shown that he has acted with full knowledge of all the facts affecting his rights." *Reynolds* v. *Mutual Fire Ins. Co. of Cecil*

*Co.*, 34 Md. 289; *Busby* v. *North American Life Ins. Co.*, 40 Md. 586; *Turnbull* v. *Home Fire Ins. Co.*, 83 Md. 312.

In the second place, even if the knowledge were to be imputed to the directors it could only have been knowledge that the payments were accepted; and they would have a right to assume that they were accepted according to the stipulation in the policy. Indeed it is hard to see how the company would be justified in refusing to receive partial payments made on lapsed policies, provided the insured desired to make such payments in the hope of getting square, and then passing a medical examination, and in reliance upon the company's promise under clause 16 to return such payments on demand if the insured should fail in his effort to so "catch up" or fail to pass the examination.

*Frederick T. Dorton* (with whom was *Thos. Ireland Elliott* on the brief), for the appellee.

The question is whether or not the continued collection of the premiums by the insurance company, after a default known to it, accompanied by assurances to the insured that the policy is still in force, may not be considered such a waiver as deprived the company of the right to set up the default as an excuse for non-payment of the policy after death had occurred.

It is a general rule that if an insurance company, after knowledge of any default for which it might terminate the contract of insurance, enters into negotiations or transactions with the assured which recognize the continued validity of the policy, and *treats it as still in force*, the right to claim a forfeiture is waived. *Murray* v. *Home Ben. Life Asso.*, 90 Cal. 407. Acceptance of premiums after maturity is a waiver of a forfeiture. *Ins. Co.* v. *Norton*, 96 U. S. 234; *Bliss on Insurance*, sec. 194.

This Court has already enunciated the principle that a default once waived cannot be made the ground of a subsequent claim of forfeiture. *Maryland Fertilizer Co.* v. *Lorentz*, 44 Md.

233; *Bollman* v. *Burt*, 61 Md. 422; *Cole* v. *Hines*, 81 Md. 479. But it has gone further, and with special reference to the law of insurance, it has decided that a waiver of the right to avoid a policy of insurance for the non-payment of a premium may be waived by the acceptance of even a portion of the premium. *Mallette* v. *British Assurance Co.*, 91 Md. 483, 485. Nor is the case of *Stockley* v. *Benedict*, 92 Md. 329, to be taken as at all qualifying the previous decisions of this Court, because in the latter case there were express provisions in the policy to the effect that the acceptance of premiums after 'default was not to be taken as a waiver.

There is no such provision in the policy sued on in this case. There is, on the contrary, an express provision already quoted in the brief, that the company is not to be freed from its liability under the policy if the death of the insured shall occur while "not more than four weekly premiums are due upon this policy." True this is made "subject, however, to clause 16 hereof," which has to do with the revival of policies which have been rendered forfeitable by reason of non-payment of dues and have been treated as forfeited by the company. These two sections must be made to harmonize, if possible, and if they cannot be harmonized then a construction must be adopted most favorable to the insured and least favorable to the company. Looking at them in this light we have the distinct proposition set out in condition 6 that the company cannot refuse payment of any policy unless at the time when the death occurs the premiums are more than four weeks in arrears. It is useless to attempt to qualify that provision by section 16, because that does not profess to relate to any policies except those upon which *more* than four weeks' dues are in arrears. And it will not even be sufficent to say that the two sections taken to together mean to embrace policies upon which there are not due four weeks' premiums at the time of death, but upon which at some previous time there may have been more than four weeks' premium due, because the evident effect, if not the avowed intent, of section 6, is to create the impression upon the policy holder and especially

upon the comparatively innocent and ignorant holders of "Industrial" policies that their policies are good so long as they are not "more than four weeks in arrears," even though they may at some previous time have been "more than four weeks" in arrears.

If the object of such ambiguous provisions in the policy is sought for it may be found in the suggestion that the longer the policies are kept running the better are the chances for the company if an ultimate forfeiture takes place.    Forfeitures are not favored by the Courts and they will not be declared except in very clear cases.    It has been distinctly decided that good faith requires an insurance company to apprize its policy holders of the position which it occupies with regard to forfeitures, and that it estops itself from asserting any defense other than that brought to the attention of such policy holder at the time when the forfeiture occurred.    *Towle* v. *Insurance Co.*, 91 Mich. 227; *Prentice* v. *Knickerbocker Life Ins.*, 77 N. Y. 488–9; *N. Y. Life Ins. Co.* v. *Baker*, 83 Fed. Rep. 652.

Let us apply these principles to the facts of the present case.    This policy was issued April 16th, 1900.    On July 16th, three months later, it became forfeitable by reason of non-payment of the weekly premiums, there being then due and payable more than four weeks' premiums.    Then good faith required that if the company proposed to treat the default as a complete avoidance of the policy the insured should have been notified that it was necessary to have a medical examination and pay up all back dues.    No such notice however was given, but the collection of premiums was continued without interruption until after the death had occurred.

McSHERRY, C. J., delivered the opinion of the Court.

This suit was instituted to recover on what is called an industrial insurance policy.    The premium was an annual one, payable in weekly instalments of twenty-five cents on each and every Monday during the life of the insured.    The policy was dated April sixteenth, nineteen hundred.    By the sixth condition indorsed on the policy it is provided that if the weekly

premiums should be due for *more* than four successive Mondays the policy would be void, but if the insured died while *not more* than four weeks premiums were due the insurer should not be free from liability, " subject, however, to clause 16 hereof." The sixteenth condition is in these words : " Policies upon which premiums are due for more than four successive Mondays become thereby lapsed whether the proper entries of such lapse are made upon the books of the society or not. Such policies can only be revived by the payment in full of all premiums due, and the passing by the insured of a medical examination satisfactory to the society ; both of which are conditions precedent to any such revival. Payment of money after a policy has been in arrears as aforesaid, without passing such a medical examination will in no case revive the policy, but will only entitle the policy holder to a return, on demand, of whatever payments may have been made since the date of the lapse of the policy." Condition 11 prohibits agents, including superintendents " and all employees other than directors of the society " from altering contracts or waiving forfeitures, and does not permit them to receive premiums on policies in arrears beyond the time allowed by the society, except as provided by clause sixteen. On July sixteenth, nineteen hundred, more than four weeks premiums were due on the policy in suit and the premiums never were paid up in full after that time, though between that date and the death of the insured thirty-five weekly payments were made. On February the twenty-fifth, nineteen hundred and one, six weekly premiums were due and during that week four of those six were paid to the company. On March the fourth, another premium fell due and was paid, leaving two due at the time of the death of the insured, and she died four days after the last payment.

It appears that each policy holder is furnished with a passbook in which payments made to the agent of the company and the dates of such payments are entered. The agent *calls* upon the policy holders to collect the premiums. From time to time inspectors or superintendents are *sent out* by the company with the primary purpose of checking the accounts of the

agents who collect the weekly premiums.   These inspectors
or superintendents then *go* with the agent. to every policy
holder, *collect what they can* and examine the policy holders
book and receipt therein for the premiums paid to the inspector,
if any are so paid.  These inspectors or superintendents make up
their reports which show the number of the policy, the name
of the insured, the amount of cash received, the amount due
on each policy after crediting payments and also the date to
which the payments made settle the premiums.   These reports
with this detailed information as to the *status* of every policy,
showing whether the policy has lapsed or is in force, are re-
turned to the office of the company where a summary of them
is made and generally shown to the president and actuary.
The inspector who called upon the insured in February, nine-
teen hundred and one, was Charles C. Rogers and a page from
his report was given in evidence.   By that report it distinctly
appeared that the policy sued on was six weeks in arrears on
February the twenty-fifth ;. that during the same week one dol-
lar was paid, and that after crediting that sum there were but two
weeks premiums due.   The plaintiff then proved by a compe-
tent witness that she was present on February the twenty-fifth,
when inspector or Superintendent Rogers and an agent named
Wacker called upon the insured and informed her that the
premiums were in arrear ;  and the witness testified that Rogers
stated to the insured , " Well, you ·pay one week and I will
fix the books all right for you," that the insured paid one
weeks premium and promised to pay three others later in the
week, whereupon Rogers said: " Mrs. Howard now the book
is all fixed up and you will be all right."   To the admissibility
of this testimony respecting the statements made by Rogers
the defendant objected, but the Court overruled the objection
and this decision forms the basis of the first exception.   We
need not pause to consider this ruling now, because what will
be said later on in discussing the prayers and the granted in-
structions will be sufficient to show its accuracy.   No allusion
need be made to the second exception, because the ground
upon which the overruled objection was founded was entirely

removed by the evidence adduced by the defendant. It further appeared that the premiums paid by the insured to Rogers were turned over by him to the company. Upon the part of the defendant, Rogers testified that he did not make the statements attributed to him by the plaintiff's witness—being those set out in the first exception. He further testified that notwithstanding the defaults in July, nineteen hundred, *collections were continued to be made upon the policy* though inspections had been made after the default, and had, of course and of necessity, revealed that default to the company. It was shown that about twenty of these inspection books with an average of three hundred names each were filed in the company's office every week.

When the testimony was closed the plaintiff asked and the Court granted the following instruction : " The plaintiff prays the Court to instruct the jury that if they shall find from the evidence that after the weekly dues payable on the policy sued upon were more than four weeks in arrear, which fact was known or could have been known to the proper officers of the defendant company, said officers or said company continued to collect dues upon said policy, and that Mrs. Howard was told by the Superintendent Rogers that her policy was all right, then they, the jury, may infer that such action on the part of said defendant company and *its* officers was a waiver of the default which occurred when the said dues were permitted to become more than four weeks overdue." An instruction embodying a converse hypothesis as to the statements of Rogers was given at the instance of the defendant. The defendant asked, but the Court declined to give an instruction, *first*, that there was no legally sufficient evidence to show that the company was indebted to the plaintiff over and above eight dollars and seventy-five cents, the amount paid by the insured after she had been in arrear for more than four weeks in July, nineteen hundred ; and, *secondly*, that there was no legally sufficient evidence to warrant the jury in finding that the company had waived the forfeiture occasioned by the six weeks delinquency in July. To the granting of the plaintiff's in-

struction and to the refusal to give those asked by the defendant the company excepted and these rulings constitute the errors assigned in the third exception.

According to the terms of the policy the failure to pay the weekly premiums for six consecutive weeks caused a forfeiture of the insurance in July, nineteen hundred; and though under the sixteenth clause a particular method was pointed out for its reinstatement, still if the company waived the forfeiture it cannot now revive that forfeiture and rely on it to defeat a recovery after a loss has happened; for a forfeiture once waived is no longer available. Having been waived it is to be treated as if it had never existed. It is too late at this day to deny or doubt that an insurance company can, if it chooses, waive a forfeiture. If it is competent to contract at all, it is equally competent to waive, with the concurrence of the other party to the contract, the terms or any of the terms of the contract it has made. Ordinarily a forfeiture results from a specific stipulation, and there is no legal principle which precludes the waiver of such a stipulation by the party for whose benefit it was made. We take it, then, to be definitely settled that a forfeiture may be waived; and as to this proposition all the cases are in accord. The point of divergence is reached, however, when the question arises as to what acts constitute a waiver. In some instances the payment and acceptance of premiums after a default has occurred, has been held to waive the default. *Mut. Fire Ins. Co.* v. *Eicholtz,* 88 Md. 92; *Ins. Co.* v. *Norton,* 96 U. S. 234; whilst in others the same act has been held *not* to waive the forfeiture at all. *Stockley* v. *Benedict,* 92 Md. 332. But there is no real conflict, though there is, when the cases are superficially looked at, an apparent inconsistency between them. In the class of cases to which *Stockley* v. *Benedict* belongs, the payment and acceptance of an overdue premium has been decided not to be a waiver because other and distinct terms of the contract or of the receipt given when the premium was paid specifically declared that such payment should not be treated as a waiver; and unless those other terms were themselves waived they were binding

and controlling.    But those other terms *could* be waived just as readily as could the terms imposing the forfeiture, for there is no greater legal impediment in the way of waiving the one than there is in the way of waiving the other.  So the question in its last analysis always is, not *can* the company waive the forfeiture, but *has* it done so ?   It is here that the terms of the policy declaring what shall be a forfeiture and what shall *not* be a waiver become important, and to those terms attention will now be dircted.

Clause sixteen contains three distinct provisions.    The first declares a forfeiture when premiums are due and unpaid for more than four successive Mondays.   The second provides that lapsed or forfeited policies can only be revived by the payment in full of the premiums in arrear and by the assured passing a satisfactory medical examination.   The third is a declaration that the *payment* of money after a forfeiture has occurred.will in no case *revive* the policy without a medical examination, but will only entitle the insured to a return, on demand, of the amount paid in after default.   The theory of the plaintiff's case is that the defendant company *waived* the forfeiture, that is, it forbore to enforce the forfeiture, and not that the company's acts reinstated or revived a forfeited policy. On the other hand the defendant contends that a forfeiture, having occurred, the policy could not be *revived*, except by pursuing the method pointed out in the second provision of the sixteenth clause ; and that the mere payment of the dues in arrear did not, under the third provision of the sixteenth clause, revive the lapsed policy.   But if the forfeiture was waived the policy was not a lapsed or forfeited policy, and therefore did not fall within the second provision of the sixteenth clause relating to the revival of a lapsed or forfeited policy.   The second provision of the sixteenth clause declaring *how* a lapsed policy may be revived could also have been waived.   Indeed, the acts relied on to establish a waiver, if they establish a waiver at all, establish a waiver of the whole sixteenth clause ; for a waiver of the forfeiture necessarily excludes the application of the sixteenth clause to the policy in any particular.

It may be conceded that the bare payment of the overdue premiums, would not constitute a waiver of the forfeiture, because, as in *Stockley* v. *Benedict*, the policy itself declares that no such effect shall be attributed to mere payments. A payment voluntarily made is an act of the insured. An acceptance of such a payment is an act of the insurer. When the terms of the contract are silent as to the effect to be given to such a payment *and* an acceptance, ordinarily the payment and acceptance will be treated as tantamount to a declaration by the company that the policy is in force, because it is only on the hypothesis that the policy *is* in force that payments *can* fall due after a cause of forfeiture has supervened ; and it is only on the assumption that payments are due that the company is entitled to accept them. But in the case at bar payment and acceptance of payment, and nothing more, could not, under clause sixteen, be regarded as a waiver ; because clause sixteen contemplates just such payments and ascribes to them an entirely different effect. In this particular the case is unlike *Eicholtz's case*, and the class to which the latter belongs. There is, however, more in the record than simply evidence of payment and acceptance. The payments made were not spontaneously made by the insured. The inspector as well as the agent of the company *called* upon the insured for the purpose of *collecting what they could* ; and they called upon the insured because they were *sent out by the company* to collect from all the policy holders. This is a very different condition from the ordinary transmission of the premium by the insured. Such a transmission, in the ordinary way, is merely the act of the insured. The fact that the company *sent* its inspector to *collect what he could*, and the fact that he called upon the insured at the instance of the company *to make collections*, are circumstances which indicate that the payments when made were made and accepted with a view to continue a live policy in force ; and that they were received, not to be held and then returned upon demand under the sixteenth clause, but that they were received because the insured was under an obligation to pay, and there could be no *contin-*

*uing* obligation to pay if the policy were not in force. The act of the company in sending its inspector to make collections, after the instalments which had been in default *had been paid up*, obviously implies that the company considered that it had the *right* to collect ; but the *right* to collect, that is, to demand payment, can not exist if the policy has been forfeited. The right of the insured to *pay* is reserved by the sixteenth clause even after forfeiture, but the right of the company to *collect*—to call on the insured and ask for payment—is consistent only with the theory that the policy was in force during the whole time the thirty-odd demands were made and acceded to, for if the policy was not in force in July, nineteen hundred, there was no obligation on the part of the insured to pay, after settling the arrearages causing the forfeiture, and if there was no obligation to pay, the company had not the correlative right to demand payment. A demand of payments after the arrearages alleged to have caused a forfeiture had been settled, is, therefore, equivalent to an assertion that there is money due by the insured to the company, and as no money can be due if the policy has lapsed, the demand, if unqualified, is simply an assurance that the policy is in force. This results from the company's course of conducting its business and is not dependent on the declarations of its agents. But the declarations of the inspector as set out in the first exception are in accord with and explanatory of the conduct of the company. For that reason those declarations were admissible and there was no error in permitting them to go to the jury. Of themselves and separated from the other facts alluded to they would not have been competent evidence under clause eleven to prove a waiver ; but they were made in the performance of a duty prescribed by the company ; and in conjunction with the acts of the company, they showed with what intent the payments were demanded by the company. The payments so demanded were turned over to the company.

What has been thus far said is all that is needed to show that there was no error committed in rejecting the *first* and

*second* prayers of the defendant.    There was legally sufficient evidence to go to the jury to show an indebtedness ; and there was competent evidence which was ample, if believed by the jury, to warrant the conclusion that the forfeiture had been waived by the company.

There is a phrase contained in the instruction given at the instance of the plaintiff which some of us were upon first view inclined to think was erroneous.    The instruction declares that there was a waiver of the forfeiture if, under the facts set forth, the officers of the company knew or *could have known* that the insured was more than four weeks in arrears whilst they continued to collect dues on the policy.    There was evidence in the case from which the jury could have inferred that the officers of the company did have knowledge of the default.    Indeed, it is not perceived how, without gross neglect of duty, they could have failed to know the fact.    The inspectors' reports were returned weekly and a glance would have shown the default from July, nineteen hundred.    It was their duty to know this and it is a fair inference that they did know what it was their duty to know.    Speaking generally, it is true, as this Court said in *Rayner* v. *Wilson,* 43 Md. 445. "It would be rather difficult to hold that parties had waived an objection of which they were not aware."    But when Courts come to deal with questions of waiver in cases like the one at bar, a rigid application of the general rule requiring that there shall be actual knowledge of the forfeiture or of the existence of the cause producing a forfeiture, before there can be a waiver, will not be insisted upon.    Thus in the case of *Knights of Pythias* v. *Kalinski,* 163 U. S. 289, it appeared that Kalinski had been in default in paying his lodge dues though he regularly paid his assessments on his benefit certificate.    Under the laws of the order his delinquency in paying his lodge dues worked a forfeiture of his benefit certificate. After his death his beneficiary sued upon the certificate and the suit was defended on the ground that his failure to pay his lodge dues forfeited his insurance under the benefit certificate.    It was answered that by the receipt of his assessments

the forfeiture was waived.    In reply to this it was contended that the grand lodge had accepted the assessments—which is merely another term for premiums—without knowing that Kalinski was in default to the local lodge for dues, and that being ignorant of the default it could not be held to have waived it.    The Supreme Court speaking by Mr. JUSTICE BROWN said in dealing with that phase of the case : "Granting that the continued receipt of the premiums or assessments after a forfeiture has occurred will only be construed as a waiver when the facts constituting a forfeiture are known to the company.    (*N. L. L. Ins. Co.* v. *Davis*, 95 U. S. 427; *Bennecke* v. *Conn. M. L. Ins. Co.*, 105 U. S. 355), this is true only of such facts as are peculiarly within the knowledge of the assured.    If the company ought to have known of the facts, or with proper attention to its own business, would have been apprised of them, it has no right to set up its ignorance as an excuse."    In *Tobin* v. *West. Mut. Aid Soc.*, 72 Iowa, 261, it was held that the defendant had waived a forfeiture for non-payment of assessments by receiving and retaining subsequent annual dues, though ignorant of the grounds of forfeiture.    The Court said :    "The fact that the company in receiving and retaining the money did not know of the previous grounds of forfeiture, or intend to waive the same, is not material.    * * * * *    By the exercise of the slightest diligence the defendant could have ascertained the alleged failure of Mrs. Tobin to pay assessments, and, by the return of the money collected during the months intervening before her death, prevented her from being lulled into security by the misleading acts of the company."    We think these views are just and sound and that they are especially applicable to insurance companies of the class to which the defendant belongs.    The policy holders of this kind of an insurance company are generally poor and illiterate people who most need protection against harsh, technical forfeitures, because least able to appreciate their significance and because easily induced by the conduct of the company to act upon the belief that their policies are in force.

Upon a review of the whole record we are satisfied that the rulings excepted to are free from error, and the judgment entered on the verdict in favor of the plaintiff will be affirmed.

*Judgment affirmed with costs above and below.*

(Decided June 17th, 1902.)