MARY GRACE CROOK vs. NEW YORK LIFE IN-
SURANCE COMPANY.

*Life Insurance—Non-Payment of Premium When Due Causing
Policy to Become Paid Up—Authority of Agent to Waive
Payment When Due—Insufficient Evidence of Waiv-
er—Tender and Payment Into Court of Amount
Admitted to Be Due—Interest.*

When the only issues made by the pleading in an action on a
policy of life insurance are whether non-payment of a pre-
mium when due had been waived by the defendant or not,
and whether such non-payment caused the policy to lapse,
then evidence as to the physical condition of the insured when
the policy was issued, or as to the difference between the pol-
icy sued on and other policies and as to similar matters, is
irrelevant.

A policy of endowment life insurance provided that if any pre-
mium after the first two insurance years is not duly paid,
"this policy will automatically become a paid-up insurance"
for the amount ascertainable in a specified manner, and also
that "a grace of one month during which the policy remains
in force will be allowed in payment of all premiums except
the first." *Held,* that under these provisions the failure to
pay a premium within one month after it became due reduced
the policy in the manner designated unless the insurer waived
such non-payment.

The cashier of the local agency of a life insurance company,
whose home office is in another State, has no authority to
bind the company by waiving the non-payment of premium
when due, if the policy provides that a waiver can be made
only by certain designated officers.

The acceptance by a local agent of payment of an overdue pre-
mium does not operate to waive a forfeiture of the policy on
account of non-payment when due, unless the company knew

or could have known what he had done, and adopted or ratified his act, or by its conduct estopped itself to insist upon a forfeiture.

A life insurance policy provided that only the president, vice-president, actuary or secretary of the company had the power to modify the contract or to extend the time for paying any premium; that premiums might be paid to an agent producing receipts signed by one of these officers and countersigned by the agent; that if any premium be not paid within one month after it became due, the policy should become a paid-up policy for a reduced amount, according to a certain table. It also provided that the insured may secure reinstatement of the policy at any time within five years after non-payment of a premium upon written application to the home office with evidence of insurability satisfactory to the company, and payment of premiums to date of reinstatement. A premium due under this policy on October 5th was not paid, and more than a month afterwards, *i. e.,* on November 7th, the local agent of the company notified the wife of the insured over the telephone that the policy had expired. The insured directed her to say that he would attend to it. To this the agent replied "all right," or "very well." On the same day the insured sent his check for the October premium. The agent sent in reply a receipt, stating that the amount would be held pending the consideration by the home office of an application for reinstatement of the policy, which by non-payment of the premium was not in force except as provided, and also asked for a medical health certificate, with a view to reinstatement of the policy. The insured did not furnish a health certificate, being at the time ill, and the premium so paid was returned to him by direction of the home office. On December 5th the insured died, and afterwards this action was brought to recover the full amount of the policy. *Held,* that under these circumstances there had been no waiver by the company of non-payment of premium when due, and the fact that the illness of the insured made it impossible for him to furnish the health certificate required for reinstatement did not relieve him from that condition.

In an action on a life insurance policy after it had become a reduced paid-up policy on account of non-payment of a pre-

mium, the defendant company filed a plea of tender and paid
into Court the cash surrender value of the policy. Before
forfeiture, the insured had obtained a loan from the company
on the policy and paid interest thereon in advance. *Held,*
that when this loan was extinguished, the proportion of inter-
est thereafter unearned was a debt due by the company, and
in this action the plaintiff is entitled, under the common
counts, to recover that sum in addition to the surrender value
of the policy.

*Held,* further, that the plaintiff is entitled to interest on the
sum due not from the death of the insured, but from the time
the proofs of death were filed, since under the policy the duty
to pay did not arise until receipt of such proofs.

*Decided January 11th, 1910.*

Appeal from the Superior Court of Baltimore City (HAR-
LAN, C. J.).

The cause was argued before BOYD, C. J., BRISCOE,
PEARCE, SCHMUCKER, BURKE, THOMAS, PATTISON and
URNER, JJ.

*Frank Gosnell* and *George Weems Williams,* for the ap-
pellant.

*Edgar Allan Poe,* for the appellee.

BURKE, J., delivered the opinion of the Court.

1. This was an action on a policy of insurance issued on
the 17th day of May, 1901, by the New York Life Insurance
Company on the life of Edward D. Crook, the husband of
the appellant, and payable to her on his death as the benefici-
ary named therein.

Mr. Crook died on December 5, 1907, and this action was
commenced on the 11th day of March, 1908. The case was
tried in the Superior Court of Baltimore City where a judg-
ment in favor of the defendant for costs was entered, and

from this judgment Mrs. Crook has prosecuted this appeal.

In the course of the trial in the lower Court, thirteen ex-
ceptions were reserved by the appellant; eleven of these re-
late to rulings on questions of evidence, and two to rulings
with respect to prayers which were offered by the parties for
instructions to the jury.

In order that the legal questions raised on the record may
be clearly understood, and intelligently disposed of, it is
necessary to examine the pleadings to see the precise issues
raised thereunder.

The declaration contains three counts. The first and sec-
ond were the common counts, first, for money received by
the defendant for the use of the plaintiff; second, for money
found to be due by the defendant to the plaintiff on accounts
stated between them; and third, a special count on the policy,
which alleged the death of the insured; that proofs of his
death were duly furnished to and approved by the defendant;
that all premiums were duly paid upon said policy according
to its terms; and that the death of the insured was not
brought about by any of the causes exempted in the policy.

It further alleged that the plaintiff and the insured had
obtained a cash loan of $2,500 from the defendant on the
25th of March, 1907, and that the original policy, according
to the requirements of the loan agreement, had been put in
possession of the defendant; that the defendant refused to
pay the plaintiff the amount of the policy (which the declara-
tion stated to be $5,000), after deducting therefrom the loan
mentioned, and that all things had been done to entitle the
plaintiff to receive the money. Attached to the declaration
was an account, which charged the defendant, as of Feb-
ruary 6th, 1908, with $5,000, the amount claimed to be due
under the policy, and credited it with the sum loaned,—thus
leaving $2,500 as a balance due by the defendant to the
plaintiff under the policy. Annexed to the declaration was
an affidavit under the *Act of* 1886, *Chapter* 184.

To the first and second counts of the declaration the de-
fendant pleaded the general issue pleas, and for a third plea

it alleged that by the terms of the policy sued on and particularly mentioned in the third count of the narr, the annual premium of $550.15 was payable on the 5th day of April in each year, but that subsequently on the 4th day of April, 1903, at the request of the insured and Mrs. Crook, the beneficiary, the premiums were made payable on April 5th and October 5th in each year, said semi-annual payments being $286.10; it further alleged the making of the loan, as stated in the declaration, and charged that when the semi-annual premium of $286.10, *due and payable on October* 5, 1907, matured, the insured did not pay said premium, nor did the beneficiary pay the same, and that the policy by reason of said non-payment lapsed, and became null and void, and was never thereafter renewed. These pleas were verified under the Act above mentioned.

The plaintiff joined issue upon the first and second pleas, and for replication to the third plea averred that the insured did pay the premium due and payable on October 5, 1907, and issue was joined upon this replication.

On the day the case was taken up for trial, to wit, May 28th, 1909, the defendant, by leave of the Court, filed an additional plea of tender and payment into Court under *Sections 20 and 21 of Article* 75, *Code,* 1904. The amount paid into Court was $523.98, which the plea averred was *sufficient* to satisfy the plaintiff's claim. The plaintiff traversed this plea and issue was joined.

The plaintiff then filed three additional replications to the defendant's third plea which had set up the non-payment of the premium due October 5, 1907. These replications were first, that the payment of the semi-annual premium of $286.10, due and payable October 5, 1907, when it matured was waived by the defendant; second, that the payment of the semi-annual premium, due and payable October 5, 1907, when it matured was waived by the defendant; third, that the non-performance of the alleged conditions of the policy as set forth in said third plea was waived by the defendant. To these additional replications the defendant filed the com-

mon traverse upon which issue was joined, and the case proceeded to trial.

It thus appears from the pleadings that there was no dispute that the policy sued on was issued by the defendant and accepted by the plaintiff; that there was no dispute as to the validity of the policy when issued; that originally there was due and payable on the 5th day of April in each year, a premium of $550.15; that $2,500 was loaned by the company on the 25th of March, 1907, at the instance of the insured and the beneficiary; that the premiums were subsequently made payable semi-annually on April 5 and October 5, respectively, the half yearly premiums being $286.10. There was no issue as to the death of the insured, or the cause of death, or the sufficiency of the proofs of death. At an early stage of the trial Mr. John P. Poe, counsel for the defendant, stated to the Court that "the defense simply is: the premium was not paid according to the contract, and the policy thereby lapsed. If we are not sound on that point, that being our only defense, why, of course, our case fails."

We will now take up the rulings of the Court on questions of evidence. These are: (1) The refusal by the Court to allow the plaintiff put in evidence Mr. Crook's application for insurance made in 1901; (2) His refusal to allow the report of the medical examiner on that application to be offered in evidence; (3) The cause of Mr. Crook's death; (4) Its refusal to allow the witness Goldsmith to say what he meant by "liened" and by "his condition," this witness having previously stated that the policy was liened on account of the insured's condition; (5) Its refusal to permit this witness to define a sub-standard policy as distinguished from a regular ten year endowment policy; (6) Or to allow this witness to show that the defendant company refused to issue to Mr. Crook a standard policy, because of his then condition; (7) Or to allow him to prove the amount of the premium on a ten year endowment policy for $5,000 on the life of a man forty-five years of age, that being the age of Mr. Crook at the time policy sued on was issued; (8) Or to

permit him to show that there was a difference between the premium on the policy sued on and the standard ten year endowment policy; (9) Or to show that the defendant knew at the time it issued the policy that Mr. Crook had Bright's disease; (10) Or that the company knew Mr. Crook's condition at the time it issued the policy; (11) To the action of the Court in striking out certain portions of the testimony of the wtiness Hunter as to the condition of Mr. Crook's health when the policy was issued, etc.

In our opinion, none of this proffered testimony had any relevancy to the issues made by the pleadings, and all of it was properly excluded. The contract of insurance sued on was issued by the defendant and accepted by the insured. That contract fixed the rights and duties of the parties, and these should not be altered, added to, or dispensed with, or modified by any or all of the facts sought to be proved. The contract alone is the measure of the rights and obligations to the parties thereto, and each had a right to stand upon it, and to insist upon the performance of its terms and conditions. It is the duty of the Court to construe written instruments; but when a contract, which the law does not forbid, has been deliberately and understandingly entered into by parties competent to make it, it is the duty of the Court to uphold it. The introduction of the collateral and immaterial matters which it was proposed to lay before the jury could only have resulted in misleading them and obscuring the real issues of fact raised by the pleadings for their determination.

2. We will now consider the main question in this case: was there a waiver by the defendant of the non-payment of the semi-annual premium due and payable October 5, 1907

By the true construction of the policy, it was necessary that the insured should pay the premiums according to its requirements, otherwise the policy would become an automatically paid-up insurance under the non-forfeitable features of the policy. This interpretation results from a consideration of a number of the provisions of the policy, all of

which contemplate the payment of the premium as necessary
to prevent the lapsing of the policy.

Two of the stipulations of the policy are as follows: (1)
"If any premium or interest due after the first two insurance
years is not duly paid, and if there is an indebtedness to the
company, this policy will automatically become a paid-up
insurance for an amount payable only in the event of death
before the end of the accumulation period, and for an amount
of cash payable at the end of the accumulation period only,
if the insured is then living, such amounts to bear the same
proportion to the amount specified in column 2 and column
3, respectively, of the table on the second page hereof, as
any excess of the reserve held by the company over such in-
debtedness bears to the reserve itself."   (2) "A grace of one
month, during which the policy remains in full force, will
be allowed in payment of all premiums, except the first, sub-
ject to an interest charge at the rate of five per cent. per
annum."

It is admitted that the premium of $286.10 which fell due
October 5, 1907, was not paid when due and payable, and
that it was not paid within the period of one month from its
maturity as provided by the policy.   Under these circum-
stances the policy ceased to remain in full force and became
automatically a paid up insurance in accordance with and
for an amount to be ascertained under the provisions of the
policy first above quoted, *unless* the defendant waived the
non-payment of this premium.

At the conclusion of the whole case the Court instructed
the jury by the defendant's first prayer that the plaintiff had
offered no evidence legally sufficient to show that the semi-
annual premium of $286.10 on the policy sued on, due and
payable on October 5, 1907, was paid on that day, or within
thirty days thereafter; or that the non-payment of said
premium within said period was waived by the defendant,
and the policy sued on reinstated by the defendant, and that,
accordingly, by the true construction of the policy sued on,
the plaintiff is only entitled to recover such sum as the jury

276     CROOK vs. N. Y. LIFE INS. CO.

Opinion of the Court.     [112

shall find to be the surrender value in cash of said policy on the day of the death of the assured, Edward D. Crook, to wit, the 5th day of December, 1907, with interest thereon from the 5th day of February, 1908, to the 28th day of May, 1909, and that upon the issues joined on the plea of payment into Court by the defendant, no evidence has been offered legally sufficient to show that such cash surrender value was more than the sum of $523.98, paid into Court on May 28th, 1909, and that upon said issue the verdict of the jury must be for the defendant.

It is conceded that the premium due October 5, 1907, was not paid, and it is also conceded that the policy was not reinstated, as asserted in this instruction. The first controverted proposition asserted therein is that the plaintiff had offered no legally sufficient evidence that the non-payment of the premium within the period limited was waived by the defendant. A decision upon this question necessarily involves an examination of all the facts in the record relied on by the plaintiff to show a waiver. We have examined the record carefully, and we agree with the lower Court that the evidence is not legally sufficient to show a waiver by the defendant.

The evidence shows that the defendant's home office was located in the City of New York. It was doing business there, and it had a branch office in Baltimore City which was in charge of William A. Gallagher, agency director, and Joseph K. Knott, cashier. But neither of these persons had authority to issue policies or change, alter, or waive any of their terms or provisions. Mr. Knott was authorized to receive renewal premiums, and to deliver receipts executed and furnished to him by the home office. Among the terms and stipulations of the policy sued on are the following: (1) "Only the president, a vice-president, the actuary, or the secretary has power on behalf of the company to make or modify this or any contract of insurance, or to extend the time for paying any premium, and the company shall not be bound by any promise or representation heretofore or here-

after given by any person other than the above." (2) "Premiums are due and payable at the home office, unless otherwise agreed in writing, but may be paid to an agent producing receipts signed by one of the above named officers and countersigned by the agent. If any premium is not paid on or before the day when due, or within the month of grace, the liability of the company shall be only as hereinbefore provided for such case."

These provisions constituted a part of the policy, and Mr. and Mrs. Crook were chargeable with notice of them, and it cannot be doubted that under these provisions Mr. Knott, the cashier, had no power or authority to waive any of the provisions of the contract. Nor is it pretended that such authority was ever delegated to him by the defendant, or that there was anything in the course of his dealings between him and the insured to lead to the belief that he had such authority, or that in fact he ever assumed to exercise it. Under such circumstances, what was said by this Court in *Busby* v. *The North American Life Insurance Company,* 40 Md. 583, is conclusive against any power in Mr. Knott to waive the non-payment of the premium. In that case JUDGE ALVEY said: "The principle seems to be well settled, that where the authority of the agent does not extend to making a new contract of insurance, he cannot waive a forfeiture and revive a contract that has expired. This question is decided in a well considered case in the Supreme Court of Connecticut, where it was held, in an action on a life policy which declared that it was not to be binding until countersigned by the agent, and delivered and the advanced premium paid, and these were the only words expressive of the agent's authority, that he was not authorized to accept a subsequent premium after the time at which the policy expired by reason of the non-payment of such premium at the proper time. *Bouton* v. *The American Mutual Life Insurance Company,* 25 Conn. 542. The Court, in the course of its opinion in that case, said: 'We think that he (the agent) was not empowered to receive any premium which was not paid according to the

requirements of the policy, that is in advance. That instru-
ment was his sole guide in regard of what he should do under
it. The contract was made by the defendants, and not by
him, excepting in the capacity of their agent; he was not
authorized to alter or vary it, or depart in any respect from
it, or dispense with the fulfillment of its conditions by the
insured, or discharge it, or revive it after it had by its terms
ceased to be obligatory on his principal, by waiver of a
compliance with its provisions or otherwise. These must be
done by the parties to the contract. He was only authorized
to act in pursuance of it, and then so far only as it gave him
authority. He could exercise only the power delegated to
him, and no power is delegated to him to depart from the
terms of the policy. It is surely not necessary to cite books
to show that an agent, authorized only to execute a contract
in behalf of one of its parties, has no power to vary it or
dispense with its execution by the other, or that one author-
ized by a person to receive a payment of a sum of money
from another on and in pursuance of a conditional contract,
which requires such payment to be made at a specified time,
is thereby empowered to authorize or waive a breach of such
condition.' The question is also very fully considered in the
case of *Catoir* v. *The American Life Insurance and Trust
Company,* 33 N. J. R. 487, and decided in the same way.
The fact that the agent held a receipt of the appelllee, trans-
mitted to him from the home office, regularly executed, and
only requiring to be countersigned by him to enable him to
receive the money due on the policy, has been much relied on
as evidence of authority in the agent to receive the overdue
premium, and waive the forfeiture. But that fact must be
taken in connection with the regular course of dealing be-
tween the home office and the agent, as shown by the appel-
lant's evidence, and also, in connection with what is expressly
provided for on the face of the policy. It is not to be pre-
sumed that the receipt was transmitted to the agent to be
used by him in any other manner than as required and
authorized by the policy."

If, therefore, it be assumed that Mr. Knott did in fact attempt to waive the non-payment, his act would not bind the defendant, unless the company knew, or could have known what he had done, *and* adopted or ratified his act, *or* by its acts or conduct had *estopped* itself to insist upon the consequences of the non-payment. *Baltimore Life Insurance Company* v. *Howard,* 95 Md. 244. But as we understand the evidence, Mr. Knott did not do or intend to do any act beyond the scope of his power, nor were any of his acts inconsistent with the purpose to insist upon the terms and conditions of the policy. On the contrary, everything done by him is consistent with the maintenance in full force of all the provisions of the contract. This conclusion rests upon the following facts appearing in the record. The contract of insurance contained this stipulation: "The insured may secure reinstatement of this policy during the accumulation period at any time within five years after the non-payment of any premium, under the following conditions: *written application to the home office with evidence of insurability satisfactory to the company;* payment of premium from the date to which premiums were duly paid to the date of reinstatement, with interest at the rate of five per cent. per annum, and payment or reinstatement of any loans, including payment of any interest due and unpaid."

The premium due October 5, 1907, not having been paid at maturity, Mr. Knott wrote to Mr. Crook on the 22nd of October, 1907, calling his attention to the fact, and informing him that "the period during which this payment will be accepted, without other requirements than interest at the rate of five per cent. per annum from above date (October 5, 1907), expires on November 5th." No answer was received to this letter, and on November 5, 1907, the policy lapsed, and became a paid-up insurance under the contract, and could only be reinstated in full force under the reinstatement clause above quoted.

On November 7th, Mr. Knott called up Mr. Crook's home, and according to the evidence of Mrs. Crook, which is most

favorable to the plaintiff, and in some material respects different from that of Mr. Knott, told her to tell Mr. Crook that his life insurance had expired. She called to her husband, and said "Ed., do you know your life insurance has expired. He said, I have thirty days, tell him. The party holding the receiver said, that has expired two days. Then my husband said, tell him I will attend to that. I did. Then the party said all right and rang off." She afterwards said the reply was "all right, or very well." It would be a most violent and unreasonable construction of such a response, uttered under these circumstances, to hold that it was intended as a waiver, or that a waiver could be deduced from it, especially in view of all the subsequent facts it clearly appears no such result was intended by Mr. Knott. Moreover, as we have seen, Mr. Knott had no authority to waive the non-payment, and it is not pretended that the company ever had or could have had knowledge of this conversation, and, therefore, was not bound by it, if it really occurred precisely as given by Mrs. Crook.

Later in the day of November 7th, Mr. Crook sent his check for the October premium and interest to Mr. Goldsmith, an agent of the defendant, in which he asked him to accept it in payment of the premium, stating that he had always been prompt in paying his premiums and saying that he "would kindly ask your indulgence in this instance." This letter was received by Mr. Goldsmith on the following day, and both the letter and check were turned over to Mr. Knott. Mr. Goldsmith replied to this letter on the 8th acknowledging the receipt of the check, and stating that the "matter will be taken up by me at once with a view of having your insurance *reinstated,*" and on the same day Mr. Knott wrote the following letter to Mr. Crook: "We are in receipt of your favor of the 7th instant, enclosing check for $287.33, tendered in settlement of passed due October 5th premium and grace interest, and as this amount was received after the expiration of grace allowed you in settlement of premium had expired, we kindly ask that you furnish us with medical

health certificate by our Dr. Owings, without expense to
the company, for reinstatement of your policy. We enclose
you herewith receipts in duplicate for the amount tendered."
The receipts mentioned in the letter were called receipts for
deposit with application for restoration of policy, and con-
tained among other things the following: "Received in Bal-
timore, State of Maryland, this 8th day of November, 1907,
from E. D. Crook the sum of two hundred and eighty-seven
33/100 dollars, *which is held pending the consideration by
the New York Life Insurance Company at its office of issue,*
of an application for restoration of policy No. 2073082, on
the life of E. D. Crook, which policy, by the non-payment of
premium due on October 5, 1907, is *not in force* except as
provided by the non-forfeiture features of said policy."

Mr. Knott placed this check in the Merchants National
Bank to the credit of the home office account, which was sub-
ject to draft direct from New York, and sent a deposit slip
to the home office. Hearing nothing from Mr. Crook, and
the conditional receipt sent to him for his signature not being
returned, Mr. Knott wrote to him on the 16th of November
stating that he had not received the medical certificate asked
for on the 8th instant. This letter was replied to on Novem-
ber 19th by Mr. Kries, who stated that Mr. Crook was not
at his office, and that he would answer it as soon as he re-
turned. On November 23rd, Howard E. Crook, a son of the
insured, wrote to Mr. Knott stating that his father was con-
fined to his bed by sickness, and would not be able to give a
health certificate, and expressing the hope that he "would
overlook this negligence this time." Mr. Crook was then in
no condition to attend to business and had not been for some-
time. On the 26th of November Mr. Knott wrote the follow-
ing letter to Mr. Anderson, the comptroller of the defendant
company: "Under date of November 8th, we received settle-
ment for October 5th premium with interest under this
policy, and placed same in suspense account pending health
certificate for reinstatement. We enclose you herewith the
letters received together with our replies, which are self

explanatory.   At the time remittance was received, we under
stand that Mr. Crook was not very well, which explains why
we ask for medical certificate instead of the self-health cer-
tificate.   Attached to the letters you will find clippings which
we cut from the Baltimore Evening News of the 25th in-
stant, regarding Mr. Crook's illness."

This letter was referred by the comptroller to the renew-
ing department of the company for its consideration, and on
November 30th Mr. Knott was directed by the comptroller
to refund the premium reported on the 8th instant.   He
thereupon promptly sent to Mr. Crook a check for the
amount.   After the death of Mr. Crook, the check was re-
turned to Mr. Knott by counsel for the appellant.   Upon
these facts it is claimed that there was a waiver by the de-
fendant.   But we think it is obvious that the check was re-
ceived by Mr. Knott not in payment of the premium, but was
received by him and retained by the company conditionally,
awaiting the medical certificate of insurability referred to
by Mr. Knott in his letter to Mr. Crook of November 8th,
or, as stated by him in his letter to Mr. Anderson, "pending
health certificate of reinstatement."   Under such circum-
stances a waiver cannot be inferred.   All the letters of Mr.
Knott indicate a well defined purpose to avoid a waiver.

The doctrine of waiver has been definitely settled by many
adjudicated cases in this Court and elsewhere, among which
are the well considered cases of *Insurance Company* v. *Nor-
ton,* 96 U. S. 234; *Monahan* v. *Mutual Life Insurance Com-
pany,* 103 Md. 145; *Baltimore Life Insurance Company* v.
*Howard, supra.*   To establish the waiver the plaintiff was
bound to prove acts, declarations, or conduct on the part of
the insurer inconsistent with the intention to insist upon a
performance of the conditions of the policy.   Such evidence
would show a waiver or an estoppel upon the defendant.   It
was upon these grounds, and upon facts essentially different
from those disclosed by this record, that the Insurance Com-
panies were held liable in the *Howard and Monahan Cases,
supra.*

It is said that by reason of the sickness of Mr. Crook he did not receive some of Mr. Knott's communications. But that does not affect the question here. Some of them were sent to his place of business, and ought to have been received by him promptly. It is also said that Mr. Crook was sick, and could not furnish the health certificate demanded by the company, and that the company was trifling with him when it insisted upon evidence of insurability as a condition of restoration of his policy. But the answer to this is that the contract provides that this shall be done before the policy shall be reinstated. It is unfortunate that Mr. Crook should have permitted his policy to lapse, but if the company does not see fit to "overlook this negligence" this Court has no power to require it to do so. It has an undoubted right to stand upon the terms of the contract.

3. Had there been no loan and no question of unearned interest in the case, we would not hesitate to approve the remaining portion of the defendant's prayer, because in the absence of such conditions, we agree that by the true construction of the policy the plaintiff could only have recovered such sum as the jury found to be the full surrender value of the policy on the day of the death of the insured with interest from February 5th, 1908, to May 28th, 1909, that being the date of the tender and payment into Court. Upon the facts contained in the record, it appears that the sum of $523.98 paid into Court was the full surrender value of the policy with interest; but it was error to have instructed the jury that upon the issues joined upon the plea of payment the defendant was entitled to a verdict. The issue raised upon that plea was whether the sum tendered was *sufficient to satisfy the plaintiff's claim,* and if the defendant owed any other sum the plaintiff was entitled to recover it under the first count in the narr. The fact of the tender of the cash surrender value of the policy did not entitle the defendant to a verdict, if there was evidence tending to show that another and additional sum was due and recoverable under the declaration. The evidence showed that Mr. Crook paid the sum

of $125 as interest on the loan in advance to April 5, 1908. The policy lapsed on November 5, 1907, the loan then became due and payable according to the loan agreement, and the policy pledged as security was foreclosed by the company on December 19, 1907. The loan was then extinguished, and no interest thereafter could have accrued, and the proportion of interest from that date held by the company should have been refunded. That unearned interest is money held by the defendant for the use of the plaintiff and was recoverable, with interest from December 19, 1907, under the declaration. *McSherry* v. *Brooks,* 46 Md. 103; *Laubheimer* v. *Nail.* 88 Md. 174; *Councilman* v. *The Bank,* 103 Md. 469.

It was contended that the prayer is also erroneous, because the interest should have been calculated, not from February 5, 1908, but from December 5, 1907, the date of Mr. Crook's death. But we cannot agree to this contention, because by the express terms of the policy the duty to pay only arose upon the receipt and approval of the proofs of death, which were sent to the company on February 5, 1908, and presumably was received by it on that day, or on the day following. *Palatine Insurance Company* v. *O'Brien,* 107 Md. 356.

It follows that there was error in granting the defendant's prayer, and that substantial injury was thereby done the plaintiff. Upon the facts contained in this record we decide, first, that there was no waiver by the defendant, and no evidence tending to prove a waiver; second, that the plaintiff at the trial below was entitled to have recovered $523.98 plus the unearned interest, with interest upon that sum from December 19, 1908. It is unnecessary to discuss the plaintiff's prayers, as they are all based upon the theories of the case in conflict with the views we have expressed, and were properly refused.

Had there been no reversible error in the defendant's prayer, we would decide that "judgment for defendant for costs" was properly entered. We need not discuss this entry further, as the propriety of such a judgment, when the jury

finds for the precise amount tendered and paid into Court, has been definitely settled in *Palatine Insurance Company* v. *O'Brien,* 109 Md. 111.

> *Judgment reversed with costs above and below, and new trial awarded.*