ANNIE CLAYTON, Formerly Annie Carves, and
JOHN CARVES

*vs.*

THE SUPREME CONCLAVE, IMPROVED ORDER
OF HEPTASOPHS, A Fraternal Organization.

*Beneficial Orders: By-laws; effect of—, not retroactive; estoppel by receipt of premiums. "Child:" Adopted Children; Act of 1892, does not apply to adults.*

At the time of the application for membership in a fraternal beneficial order, there was no law in Maryland for the formal adoption of children; the provisions in the by-laws of the society, while making no mention of "adopted children," did not exclude them; an applicant to such society had named two adopted children, described as such, as the beneficiaries under the policy; the association for over 21 years accepted the premiums on the policy issued on such application: *Held,* that the association, upon the death of the member, was estopped from refusing payment to the beneficiaries, merely because a recent by-law restricted payments to adopted children to such as had been *"legally"* adopted.                    p. 34

The word "child" in a legal document is not always confined to immediate off-spring.                    p. 36

In general, an insurer, by receiving and retaining the premiums on a contract of insurance, is estopped from denying its power to issue the policy or its liability thereunder.          p. 34

The laws of a beneficial order, regularly adopted after a person becomes a member, are binding upon him, unless they are palpably unreasonable.          p. 35.

The rights of a beneficiary, under such policies, are not vested, but merely expectant; only upon the death of the member (in good standing) does such interest become definite and vested.

p. 35.

Chapter 244 of the Acts of 1892, providing for the legal adoption of children, does not provide for the adoption of adults.

p. 35.

*Decided January 10th, 1917.*

Appeal from the Baltimore City Court. (STANTON, J.)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BURKE, URNER, STOCKBRIDGE and CONSTABLE, JJ.

*W. Harry Holmes* (with whom were *Harry E. Scherf, George Keck* and *Albert Ecke* on the brief), for the appellants.

*M. Maurice Meyer* and *Olin Bryan,* for the appellee.

STOCKBRIDGE, J., delivered the opinion of the Court.

This suit was brought to recover the sum of $1,000 from the Improved Order of Heptasophs by the plaintiffs, who were named as beneficiaries in a certificate issued to William Montgomery in January, 1894.

In that certificate the Supreme Conclave promised and bound "itself to pay out of its benefit fund to adopted children John Carves and Annie Carves within sixty days from receipt of satisfactory proof of death the sum of $1,000," from the time of its issue until William Montgomery's death.

The several assessments were duly paid, so that there is no question of a default upon the part of Mr. Montgomery.

There is no conflict of evidence upon any material point in this case, and at the conclusion of the evidence the trial Court granted an instruction directing a verdict for the defendant, purely upon the questions of law involved.

The plaintiffs were children of a sister of the wife of William Montgomery, and upon the death of their parents, when the present plaintiffs were about three and five years of age respectively, they were taken by Mr. Montgomery into his home, and reared as though they were his own children. This was about 1881, at which time there was no statute in this State providing any method for the legal adoption of children. What was done amounted to an adoption in fact, and was so acted upon by both the plaintiffs and Mr. Montgomery during Mr. Montgomery's life.

At the time when Mr. Montgomery became a member of the Heptasophs, the laws of that order which were then in force, specified the classes of persons to whom the endowment should be made payable, and further provided, that "the full name or names and the dependence upon and the connection or relationship to him of the person or persons to whom he desires the amount of the endowment to be paid" should be entered upon the application, "and the same shall appear upon the certificate issued by the Supreme Secretary." In the classes which were named in Section 91, children and grandchildren were included, but no mention was made of adopted children, and the laws of the Order promulgated in 1893 contained substantially the same provisions.

There is no proof upon the part of the defendant that any misrepresentation was made by Mr. Montgomery in his application with regard to the relationship to him of the beneficiaries whom he named.

For more than twenty-one years after Mr. Montgomery filed his application, which gave notice to the defendant order that the beneficiaries whom he named bore a relation to him not closer than adopted children, the Order continued

to receive from him, at regular intervals, the dues and assessment levied upon its members, and not until after his death was there any attempt to repudiate the obligation, or to seek to have his membership cancelled, or his beneficiaries changed, and the Order can not now be heard to raise the question that John and Annie Carves were not included in the classes of those who might be beneficiaries.

As was said in the case of the *Baltimore Life Ins. Co.* v. *Howard,* 95 Md. 259: "If the company ought to have known the facts, or with proper attention to its own business, would have been apprised of them, it has no right to set up its own ignorance as an excuse," and the facts on which the defendant relies for its defense were set out in the application. In *Cooley's Briefs on Insurance,* page 610, it is said, that in accordance with the general rule "is the principle that an insurer by receiving and retaining the premiums on a contract of insurance is estopped to deny its power to issue the policy or that liability attached thereunder." For this the author cites numerous cases which fully bear out the statement already quoted.

The defendant further claims that by its laws promulgated in 1913, the question of adopted children was covered, where the individuals to whom benefits may be made payable are described as "children by legal adoption." There does not appear in this case to have been a "legal adoption" of the plaintiffs by William Montgomery, and the defense is, therefore, sought to be made, that inasmuch as in his application for membership Mr. Montgomery had agreed to be bound by after-adopted laws, that the language used in the laws of 1913 controlled, and the plaintiffs are without remedy.

It has been repeatedly announced by this Court that laws of an order, regularly adopted after a person becomes a member, are binding upon him unless they are palpably unreasonable. It is germane, therefore, to consider this principle in connection with the facts of the particular case before us.

At the time when Mr. Montgomery took his wife's sister's children to rear, there was no provision by statute for any legal adoption. Our statute on the subject was passed in 1892, Ch. 244, some ten or eleven years after Mr. Montgomery had in fact adopted the children; he became a member of the Heptasophs in 1894, but no question was at that time raised, whether the provisions of the Act of 1892 had been complied with, and he was, therefore, justified in assuming that it was the fact, rather than the legal status, in which the order with which he was connecting himself was concerned.

The relationship of member and beneficiary in expectancy had already been created before the order, by its laws of 1913, restricted the class of possible beneficiaries to "children by legal adoption."

By this time both of the beneficiaries named had become of age, and the statute for adoption did not provide for the adoption of an adult. *Hillers v. Taylor,* 108 Md. 156. Therefore, it follows, that to sustain the contention of the defendant would be equivalent to enabling it to profit, by excluding from participation in benefits persons for whom the member had for years been paying to secure the benefit.

It is perfectly apparent that if the insurance in this case had been under a regular policy of insurance, there would have been vested rights in the insured, which the insurer could not of its own volition annul. The right of a beneficiary in a mutual order, such as the defendant, has generally been characterized not as a vested right, but an expectancy merely, and that is true because of the reserved right which remained in the member to change from time to time, as he may see fit, the person to whom the benefit is to be payable upon his death; but that which is during the lifetime of the member an expectancy merely, becomes upon his death a definite, vested interest, and thus to give effect, under the circumstances of this case, to the laws of the defendant as embodied in the compilation of 1913, would be clearly unreasonable.

This case is in many respects not unlike that of *Carmichael* v. *Northwestern Mut. Ben. Asso.*, 51 Mich. 494, in which a single woman, who had lived with an old man, and been treated by him as his daughter, although not in fact adopted, was held to have an insurable interest in the life of him who had been as a father to her.

Even more closely in point is the case of *Martin* v. *Aetna Ins. Co.*, 73 Maine, 25; this case arose under a policy of insurance, and the first question which the Court had to dispose of, was the status of John E. Wall, who had been adopted before he was one day old, and without any legal ceremony whatever. A benefit in the proceeds of the policy was claimed in behalf of Wall, under the language contained in the policy of a child, and the Court in deciding the case said: "The case shows that he was not theirs by birth, but was theirs by gift and adoption. If the word is to be understood in its ordinary sense, as used in wills and such instruments, without anything in the circumstances to qualify its meaning, it is clear he must be excluded. But this policy is a contract, and must be so construed as to carry out the evident intention of the parties. To accomplish this it is not only admissible but necessary to inquire into the circumstances of the parties to the contract, as well as their contemporaneous acts. The word 'child' in a legal document, is not always confined to immediate off-spring. It may include grand child, step-children, children of adoption, etc., as may be necessary to carry out the intention." This case was followed and re-affirmed in the later case of *Virgin* v. *Marwick*, 97 Maine, 578.

In some States a distinction is drawn, so far as property rights are concerned, between real and personal property, and a greater strictness is maintained where the title of real estate is involved, but the authorities very generally establish the proposition, that a parole obligation by a person to adopt the child of another as his own, accompanied by the virtual though not statutory adoption, and acted upon by

both parties during the obligor's life, may be enforced upon the death of the obligor, who dies without disposing of the property by his will; nor is such a contract rendered invalid by statutory provisions requiring the execution of wills to be in writing. 1 *C. J.* 1377; *Crawford* v. *Wilson,* 139 Ga. 654, 44 L. R. A. n. s. 773; *Chehak* v. *Battles,* 133 Iowa, 107, 8 L. R. A. n. s. 1130, and note appended thereto; *Sharkey* v. *McDermott,* 91 Mo. 647; *Lynn* v. *Hockaday,* 162 Mo. 111, 85 Am. St. Rep. 480.

Reference was made in the argument, and in the brief for the appellee, to the statute of this State, with regard to those who might be made the beneficiaries under such certificates in beneficial organizations. But the purpose of the statute is so manifestly to define those who may be said to have an insurable interest in the life of another, and to discountenance mere wagering contracts, that what has already been said sufficiently disposes of that contention.

By the third plea which the defendant filed in this case, there was a disclaimer of any interest in the amount for which this certificate was issued. The proof shows conclusively that there are no near relatives of Mr. Montgomery who can claim this fund, as against the clearly disclosed intention of Mr. Montgomery as evidenced by the insertion of the names of the plaintiffs in his application for membership in the defendant order. The fund, therefore, must of necessity pass either to the beneficiaries whom he designated, or else lapse into the general treasury of the Heptasophs, and no adequate reason has been suggested why the latter result should follow.

The judgment appealed from will, therefore, be reversed, and as this Court has no jurisdiction to enter a judgment in a suit at law, the case will be remanded to the Baltimore City Court for a new trial.

> *Judgment reversed and case remanded; costs to abide the final disposition of the case.*